# EXHIBIT "A"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW TAYLOR and REY MORELL, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>THE CITY OF YONKERS, TRANSIT AUTO TOWING INC.,<br>MICHAEL SPANO individually,<br>ANTHONY LANDI individually,<br>STEVEN LEVY individually,<br>CHRISTOPHER SAPIENZA individually,<br>AND JOHN DOES 1-5,<br><br>                    Defendants. | CIVIL ACTION NO:<br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Matthew Taylor and Rey Morell ("Plaintiffs") bring this Complaint against Defendants The City of Yonkers ("Yonkers"), Transit Auto Towing, Inc. ("Transit"), Michael Spano ("Spano"), Anthony Landi ("Landi"), Steven Levy ("Levy"), and Christopher Sapienza ("Sapienza," and with Spano and Landi, the "Individual Defendants," and with Yonkers and Transit, the "Defendants"), and alleges as follows:

### INTRODUCTION

1.        Yonkers regularly seizes vehicles as part of its law enforcement activity, but has no constitutionally appropriate procedure for disposing of seized vehicles consistent with the basic due process requirements of notice and a hearing. Instead, Yonkers employs the outdated and constitutionally unsound practice of summarily turning over control of seized vehicles to the private company that towed and stored the vehicle when Yonkers seized it.  In this regard, Yonkers's

policy is to enlist a garage to tow and store vehicles and allow those garages to lien and/or sell the vehicle as a means to cover the costs of towing and storage.

2.      The Plaintiffs challenge Yonkers's impounded vehicle disposal policy because it does not afford affected persons the opportunity to participate in Yonkers's decision-making. When Yonkers impounds a vehicle incident to arrest, it turns over the vehicle to one of the towing companies that Yonkers has on standby pursuant to a prearranged contract. To retrieve an impounded Vehicle, a vehicle owner must do exactly as Yonkers demands. The towing company supports Yonkers by refusing to release a vehicle unless Yonkers has authorized release.

3.      If the vehicle owner does not act to Yonkers's satisfaction, Yonkers's policy is to declare that Yonkers has, by operation of law, become the owner of the vehicle so that Yonkers may sell the vehicle for its own profit.

4.      Here, Yonkers seized a 2020 BMW bearing VIN 3MW5R7J01L8B13515 (the "Vehicle") owned by Plaintiffs.  The seizure was performed incident to the arrest of Rey Morell for a traffic violation, which was ultimately dismissed. Yonkers seized the Vehicle by directing Transit to tow and detain the vehicle until Yonkers gave Transit further instructions. Plaintiffs tried to recover the vehicle by going to both the Yonkers police precinct and Transit, but they were rebuffed. No opportunity for a hearing was afforded to Plaintiffs—with adequate notice *of that hearing*--where Plaintiffs could have their request for release of their vehicle reviewed by a neutral decisionmaker.

5.      Plaintiffs later discovered that Yonkers had completed New York State Department of Motor Vehicles paperwork, which transferred title to the Vehicle to Transit as of the same day that the Vehicle was towed. In short, Yonkers took the Vehicle from Plaintiffs and transferred it

(and all the personal property in it) to Transit as payment for Transit's role in facilitating Yonkers's policy. Yonkers and Transit's actions deprived Plaintiffs of their rights to due process as secured by the Fourteenth Amendment to the United States Constitution, their right to be free from unreasonable seizures as guaranteed by the Fourth Amendment and their right to be free from uncompensated takings as mandated by the Fifth Amendment of the United States Constitution.

6.      Yonkers and Transit seize hundreds of vehicles every year and equally deprive numerous other persons with interests in such impounded vehicles of their rights mandated by the Federal Constitution.  Upon information and belief, the damages owed by Yonkers and Transit to the class exceed $25,000,000.00 or more, in an amount to be determined after discovery.

## JURISDICTION AND VENUE

7.      Plaintiffs bring this civil rights action pursuant to 42 U.S.C. §1983 and §1988 for deprivation of Plaintiffs' rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

8.      Jurisdiction is conferred on this Court by 28 U.S.C. §§1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in the Court for all suits brought pursuant to 42 U.S.C. §1983.

9.      Jurisdiction is conferred on this Court by 28 U.S.C. §1331 because the cause of action arises under the Constitution and laws of the United States.

10.      The supplemental jurisdiction of the District Court is invoked pursuant to 28 U.S.C. §1367 for interrelated state law claims which arise from the occurrences giving rise to the Federal claims and which have a common nucleus of operative fact.

11.      Venue lies in the Court pursuant to 28 U.S.C. §1391.

## **PARTIES**

12.     Plaintiffs are individuals and residents of Bronx County in the State of New York.

13.     Yonkers is a municipal corporation organized under the laws of the State of New York.

14.     Transit is, upon information and belief, a corporation organized and existing under the laws of the State of New York and operating as a business engaged in the towing and storage of motor vehicles.

15.     Michael Spano is an individual resident of the State of New York.  Spano is the Mayor of Yonkers, and, upon information and belief, created and/or approved and/or implemented some or all of Yonkers's policies, customs, and practices surrounding the impound and disposal of seized motor vehicles.

16.     Anthony Landi is an individual resident of the State of New York.  Landi is a Deputy Mayor of Yonkers, and, upon information and belief, created and/or approved and/or implemented some or all of Yonkers's policies, customs, and practices surrounding the impound and disposal of seized motor vehicles.

17.     Steven Levy is an individual resident of the State of New York.  Levy is a Deputy Mayor of Yonkers, and, upon information and belief, created and/or approved and/or implemented some or all of Yonkers's policies, customs, and practices surrounding the impound and disposal of seized motor vehicles

18.     Christopher Sapienza is an individual resident of the State of New York.  Sapienza is the Police Commissioner of Yonkers, and, upon information and belief, created and/or approved and/or implemented some or all of Yonkers's policies, customs, and practices challenged here.

19.     John Does 1-5 are fictitious individuals who, upon information and belief, reside in the State of New York.  John Does 1-5 are officials and/or employees of Yonkers who created and/or approved and/or implemented some or all of Yonkers's policies, customs, and practices challenged here.

## FACTS COMMON TO ALL COUNTS

### Plaintiffs' rights in the Vehicle

20.     Until the actions challenged by this lawsuit, Plaintiff Taylor was the titled owner of the Vehicle.

21.     Until the actions challenged by this lawsuit, Plaintiff Morell was, by agreement with Plaintiff Taylor, a co-owner with a substantial interest in the Vehicle by virtue of having invested $14,000 to purchase the Vehicle and having used it regularly to, *inter alia*, commute to work. Plaintiff Morell also had significant and valuable personal property inside the Vehicle at the time it was seized, including but not limited to expensive sneakers, his clothes, his daughter's clothes, and some of the ashes of his deceased father.

### Yonkers and Transit Seized the Subject Vehicle

22.     On or about March 11, 2024, Plaintiffs were co-owners of the Vehicle.

23.     On or about March 11, 2024, Yonkers seized the Vehicle through Yonkers officials acting within their duties as law enforcement officers.

24.     On or about March 11, 2024, Transit was an active regular contract agent, towing and detaining vehicles at the direction of Yonkers's law enforcement officials.

25.     Upon seizing the Vehicle, Yonkers directed Transit to tow and detain the Vehicle.

**Yonkers and Transit Invaded Plaintiffs' Property Right To Possess and
Exclude All Others when they impounded and later disposed of the Vehicle**

26.     Yonkers and Transit refused Plaintiffs' demand for possession of the Vehicle and retained the Vehicle to enforce Yonkers's impounded vehicle disposal policy.

27.     On February 25, 2024, Yonkers sent Plaintiffs a letter stating that "Ten (10) days from this date, April 25, 2024, the vehicle will be disposed of…" See **Exhibit 1**.

28.     Yonkers and Transit's invasion of Plaintiffs' property right to possess and exclude all others from The Vehicle constituted a deprivation of property.

29.     Yonkers and Transit also appropriated the personal property items that were inside The Vehicle when it was impounded.

30.     Plaintiffs made numerous demands that Yonkers and Transit release the Vehicle and the personal property items that were inside the vehicle.

31.     Yonkers and Transit worked in concert to detain the Vehicle from Plaintiffs by imposing a series of conditions with which Yonkers and Transit insisted Plaintiffs comply before Yonkers and Transit would release the Vehicle.

32.     Yonkers would not permit Plaintiffs to recover the Vehicle unless Plaintiffs paid all fees demanded by Transit.

33.     Yonkers would not permit Plaintiffs to recover the Vehicle unless Plaintiffs executed a release of liability in favor of Yonkers.

34.     Yonkers threatened that the vehicle would be "disposed of" unless Plaintiffs complied with Yonkers's demands. See **Exhibit 1**.

35.     Transit would not permit Plaintiffs to recover the Vehicle unless Plaintiffs first obtained permission from Yonkers to recover the Vehicle.

36.    Transit would not permit Plaintiffs to recover the Vehicle unless Plaintiffs paid all sums of money demanded by Transit, including a daily charge for every day Transit detained the Vehicle.

37.    Transit would not permit Plaintiffs to recover the Vehicle unless Plaintiffs executed a release of liability and hold harmless agreement in favor of Transit.

38.    Yonkers submitted an application to the New York State Department of Motor Vehicles to obtain title to The Vehicle, wherein Yonkers represented that the "Transfer Date" on which Yonkers took title was "03/11/2024." See **Exhibit 2**.

39.    Yonkers gave The Vehicle and its contents to Transit.

40.    Yonkers did not pay Transit for Transit's services in towing and its detention of the Vehicle, as per Yonkers's policy, by any means other than Yonkers giving the Vehicle to Transit.

41.    Transit seized, towed, and possessed the Vehicle solely by virtue of its furtherance of Yonkers's impounded vehicle disposal policy. Transit detained the Vehicle as a joint participant with Yonkers, and therefore, was acting under color of law when it seized, detained, and appropriated The Vehicle.

42.    Yonkers did not provide Plaintiffs with compensation for taking Plaintiffs' Vehicle for the purpose of compensating Transit for services Transit provided to Yonkers.

43.    In fact, upon information and belief, Transit pays a substantial sum to Yonkers every year—over $90,000—in exchange for the privilege of seizing, impounding, and eventually taking title to cars for Yonkers.

**Yonkers and Transit Refuse to Institute a Procedure for Neutral Review**

44.    Both before and after seizing the Vehicle, Yonkers and Transit did not take action to secure a neutral review of the seizure.

45.     Both before and after seizing the Vehicle, Yonkers and Transit did not take action to secure a neutral review over the continued retention of the Vehicle.

46.     Both before and after seizing the Vehicle, Yonkers and Transit did not pursue judicial disposition at all, much less within a reasonable amount of time.

47.     Prior to submitting paperwork to the New York State Department of Motor Vehicles stating that the vehicle was abandoned, Yonkers and Transit had not provided any hearing before an impartial decision-maker, with adequate notice, whereat Plaintiffs could argue that they had not abandoned the vehicles, or otherwise protect their interests in recovering the vehicle and the property inside.

48.     What notice was provided by Yonkers and/or Transit was constitutionally inadequate for due process purposes, because they did not notify Plaintiffs *of a hearing*.

49.      Plaintiffs never recovered possession of their vehicle nor any of the personal property that was inside The Vehicle when it was seized.

**The Individual Defendants are Individually Liable for Yonkers's Unconstitutional Policies, Customs and Practices Surrounding the Impound and Disposal of Seized Vehicles**

50.     The Individual Defendants knew or should have known that the approval of and/or participation in Yonkers's policies, customs, and practices described herein would deprive vehicle owners of their rights under the Fourth, Fifth, and Fourteenth Amendments.  Among other things, prior Federal Court rulings against Yonkers have already made clear that Yonkers cannot seize and dispose of Vehicles in this manner without violating these constitutional rights.  Moreover, the Individual Defendants knew or should have known that any attempt by Yonkers and/or Transit to take Plaintiffs' property rights would be void as a matter of New York law, because New York State Constitution Art. 1, §§ 1, 2, 6, 7 and 12 prohibit Yonkers and/or Transit from doing so.

51.     As such, each of the Individual Defendants is individually liable for (a) creating a policy or custom under which unconstitutional practices occurred; (b) having been informed of the violation but failing to remedy the wrong; (c) acting grossly negligent in supervising subordinates who implemented the unconstitutional policy; and (d) exhibiting deliberate indifference by failing to act to remediate the unconstitutional policy and conduct at issue in this litigation.

52.     Under Yonkers City Code Section 111-15(B), the Police Commissioner (Sapienza) first recommends, and then the Mayor (Spano) chooses, "licensees" who are authorized to maintain "impound areas" for the City and who can "remove impounded vehicles" for the City, which include but are not limited to Transit.

53.     The Mayor (Spano) also sends one of his Deputy Mayors (Landi and Levy) to each meeting of the Board of Contract and Supply at which the Deputy Mayor approves all tow contracts, *and their terms*, including but not limited to the contract with Transit implementing Yonkers aforementioned policies, customs, and practices.

54.     The Police Commissioner (Sapienza) maintains the written policy which requires impoundments for a wide variety of infractions, including minor ones such as driving with a suspended or expired registration, failing to produce a valid drivers license, or having failed to pay a certain amount in unadjudicated parking tickets (which Yonkers calls being a "scofflaw").  The Police Commissioner (Sapienza) also maintains and implements the policy, custom, and practice of "disposing of vehicles" on ten days' notice by turning over title to Transit and other towing companies, without any hearing whatsoever.

## CLASS ALLEGATIONS

55.     Plaintiffs bring this action on behalf of themselves and those similarly situated. As detailed in this complaint, Defendants regularly and routinely seize and detain vehicles under

Yonkers's impounded vehicle disposal policy in violation of the constitutional rights of those vehicles' owners.

56.     The Defendants implement this policy over the entire geographic area of the City of Yonkers, impacting thousands of vehicles in which persons were deprived of their property rights in seized vehicles with no notice, no due process, and no compensation.

57.     Accordingly, this action is ideally situated for class-wide resolution, including injunction and/or declaratory relief.

58.     The class is defined as all persons with interests in vehicles that were seized by Yonkers incident to an arrest.

59.     The Class is properly brought and should be maintained as a class action under Federal Rule 23 (b), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy.

60.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe there are thousands of instances where persons have been deprived of their rights in seized vehicles by the implementation of Yonkers's impounded vehicle disposal policy.

61.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a.     The contours of Yonkers's policies and the manner in which they are carried out;

    b.     Whether those policies violate the constitutional rights of owners of these vehicles, specifically under the Fourth, Fifth, and Fourteenth Amendments;

    c.       Whether Transit acted under color of law in impounding and disposing of Plaintiffs' and the Class's vehicles;

    d.       Whether the Individual Defendants are responsible for the violation of constitutional rights via their role in creating and implementing Yonkers's impounded vehicle disposal policy;

    e.       Whether Plaintiffs and the Class are entitled to injunctive and declaratory relief; and

    f.       Whether Plaintiffs and the Class are entitled to money damages under the causes of action delineated below.

62.    <u>Typicality</u>: Plaintiffs are members of the Class. Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same injury when Defendants enforced their impounded vehicle disposal policy. Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

63.    <u>Adequacy</u>: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class Members they seek to represent; their 42 U.S.C. 1983 claims are common to all members of the class and they have a strong interest in vindicating their rights; they have retained counsel competent and experienced in Section 1983 claims based upon deprivation of rights in seized vehicles and class action litigation; and they intend to prosecute this action vigorously. Plaintiffs have no interests that conflict with those of the Class. Plaintiffs and their counsel will fairly and adequately protect the Class Members' interests.

64.    Defendants have acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiffs and the Class Members. The prosecution of separate actions by individual Class Members would be inefficient and would create a risk of inconsistent and varying adjudications.

65.     The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy.

66.     Common issues of law and fact predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' concerted action in enforcing Yonkers's impounded vehicle disposal policy.

67.     <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.     The joinder of numerous individual Class Members with thousands of claims is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.     The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive-if not totally impossible-to justify individual actions;

c.     When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Class and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.     This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.     Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.     This class action will assure uniformity of decisions among Class Members;

g.     The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitive litigation;

h.     Class Members' interests in individually controlling the prosecution of separate actions are outweighed by their interest in efficient resolution by a single class action; and

      i.      It would be desirable to concentrate in this single venue the litigation of all Plaintiffs who were deprived of their rights by Yonkers's enforcement of its impounded vehicle disposal policy.

68.     Accordingly, this Class is properly brought and should be maintained as a class action under Fed. Rule Civ. Pro. 23 (b) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## INJUNCTIVE AND DECLARATORY CLASS RELIEF

69.     Fed. Rule Civ. Pro. 23 (b) contemplates a class action for purposes of seeking class-wide injunctive and declaratory relief.

70.     Here, Defendants have engaged in conduct that deprives persons of their civil rights by destroying personal property with no constitutional safeguards whatsoever. Since Yonkers's impounded vehicle disposal policy has been uniformly directed at all such vehicles within the City of Yonkers, New York, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendants' continuing misconduct.

71.     The injunctive and declaratory relief Class is properly brought and should be maintained as a class action, satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy.

72.     The injunctive and declaratory relief Class is properly brought and should be maintained as a class action because Plaintiffs seek injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class. Certification is appropriate because Defendants have acted or refused to act in a manner that applies generally to the injunctive Class (i.e., Defendants continue to enforce the unconstitutional aspects of Yonkers's impounded vehicle disposal policy).

73.     Any final injunctive relief or declaratory relief would benefit the entire Injunctive

Class as Defendants would be prevented from continuing their unconstitutional and deprivational

seizure and destruction of vehicles and personal property in such vehicles at the time of seizure.

## COUNT I
### Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983
### (Deprivation of Property by Unreasonable Seizure)

74.     Plaintiffs reallege and incorporate herein by reference the allegations set forth in the

prior paragraphs herein.

75.     Plaintiffs are the holders of a protectible property interest in the Vehicle and the

personal property inside the vehicle at the time of seizure.

76.     Yonkers and Transit meaningfully interfered with Plaintiffs' protectible interest in

the Vehicle by towing it, detaining it, appropriating it, altering the title to it via submission to the

New York State Department of Motor Vehicles, and transferring the Vehicle.

77.     By these actions, Yonkers and Transit acted under color of law to seize the Vehicle

within the meaning of the Fourth Amendment to the United States Constitution.

78.     Yonkers's and Transit's seizure of the Vehicle was unaccompanied by a warrant.

79.     Yonkers's and Transit's seizure of the Vehicle was unaccompanied by any

legitimate exception to the warrant requirement. Alternatively, to the extent the initial seizure was

accompanied by any arguably legitimate exception to the warrant requirement, it was carried out in

an unreasonable manner of execution insofar as the detention of the Vehicle and encumbering of the

Vehicle with a lien exceeded the scope necessary to complete any legitimate task associated with

the purported warrant exception for which the vehicle was seized.

80.     Yonkers's and Transit's seizure of the Vehicle was therefore unreasonable in

violation of the Fourth Amendment to the United States Constitution.

81.     Yonkers's and Transit's unreasonable seizure of the Vehicle was accomplished in accordance with Yonkers's and Transit's standard policy and/or custom under Yonkers's impounded vehicle disposal policy and program.

82.     The Individual Defendants created and/or implemented the standard policy and/or custom of Yonkers's impounded vehicle disposal policy and program under which Yonkers and Transit unreasonably seized the Vehicle.

83.     As a direct and proximate result of Defendants' violation of Plaintiffs' Constitutional right to be free from unreasonable seizures, Plaintiffs have suffered damages based upon the lost value of The Vehicle and loss of use of The Vehicle.

84.     The foregoing allegations apply to the personal property located in The Vehicle at the time it was seized, and Plaintiffs are, therefore, entitled to relief under 42 U.S.C. 1983 as to both the vehicle and the contents.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, jointly and severally, for actual damages, consequential damages, statutory damages, fees and costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. 1988, and such other and further relief as the Court deems just and proper.

## COUNT II
### Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983
### (Deprivation of Property Without Due Process of Law)

85.     Plaintiffs reallege and incorporate herein by reference the allegations set forth in the prior paragraphs herein.

86.     Plaintiffs are the holders of a protectible property interest in The Vehicle and the personal property inside the vehicle at the time it was seized.

87.     Yonkers's and Transit's actions resulted in the deprivation of Plaintiffs' protectible property interests in the Vehicle.

88.     Yonkers and Transit have no mechanism for, nor did they secure, a review of any of Yonkers's and Transit's actions in relation to the Vehicle before a judge or other neutral decisionmaker.

89.     Yonkers and Transit did not provide Plaintiffs an opportunity to be heard in relation to any of Defendants' actions in relation to the Vehicle in any venue at any time.

90.     Because Yonkers and Transit provided no mechanism for, nor did either secure, a review of any of Yonkers's and Transit's actions in relation to the Vehicle by a judge or other neutral decisionmaker, Yonkers and Transit failed to provide Plaintiffs with constitutionally adequate notice of that non-existent hearing procedure.

91.     Yonkers's and Transit's deprivation of Plaintiffs' rights in the Vehicle was therefore accomplished without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

92.     Yonkers's and Transit's deprivations of Plaintiffs' rights in the Vehicle were accomplished in accordance with Yonkers's and Transit's standard policy and/or custom under Yonkers's impounded vehicle disposal policy and program.

93.     The Individual Defendants created and/or implemented the standard policy and/or custom of Yonkers's impounded vehicle disposal policy and program under which Yonkers and Transit seized the Vehicle without appropriate procedural due process.

94.    As a direct and proximate result of Defendant's violation of Plaintiffs' Constitutional right to be free from deprivations without due process of law, Plaintiffs have suffered damages based upon the lost value of The Vehicle, loss of use of The Vehicle, and other damages.

95.    The foregoing allegations equally apply to the personal property located in the Vehicle at the time it was seized, and Plaintiffs are, therefore, entitled to relief under 42 U.S.C. 1983 as to both the Vehicle and its contents.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, jointly and severally, for actual damages, consequential damages, statutory damages, fees and costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. §1988, and such other and further relief as the Court deems just and proper.

## <u>COUNT III</u>
### Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983
### (Taking of Property Without Just Compensation)

96.    Plaintiffs reallege and incorporate herein by reference the allegations set forth in the prior paragraphs herein.

97.    Plaintiffs are the holders of a protectible property interest in The Vehicle and the personal property inside the vehicle at the time it was seized.

98.    Yonkers compensated Transit, in whole or in part, by turning over possession of The Vehicle to Transit, who lawfully possessed The Vehicle only by virtue of having obtained it from Yonkers.

99.    Transit accepted The Vehicle as compensation, in whole or in part, for the services it provided to Yonkers, namely the towing and detention of The Vehicle.

100.    Yonkers damaged Plaintiffs' property interests in The Vehicle and their possessory rights by turning over The Vehicle to Transit and by altering the title to the vehicle through submissions to the New York State Department of Motor Vehicles.

101.    Yonkers thereby took Plaintiffs' interests in The Vehicle—their right to the value of The Vehicle and the right to possession—for a public use.

102.    Yonkers did not compensate Plaintiffs for the taking of their interests in The Vehicle.

103.    Yonkers, therefore, took Plaintiffs' property for public use without just compensation in violation of the takings clause of the Fifth Amendment to the United States Constitution.

104.    Yonkers's taking of Plaintiffs' rights in The Vehicle was accomplished in accordance with Yonkers's standard policy and/or custom under Yonkers's impounded vehicle disposal policy and program.

105.    As a direct and proximate result of Yonkers's violation of Plaintiffs' Constitutional right to be free from takings without just compensation, Plaintiffs have suffered damages based upon the lost value of The Vehicle, loss of use of The Vehicle, and other damages.

106.    Transit acted as the agent for Yonkers in the taking of Plaintiffs' property and thus, Transit is jointly liable with Yonkers.

107.    The Individual Defendants created and/or implemented the standard policy and/or custom of Yonkers's impounded vehicle disposal policy and program under which Yonkers and Transit unreasonably seized the Vehicle.

108.    The foregoing allegations apply to the personal property that was in the vehicle at the time it was seized and thus, Plaintiffs are, therefore, entitled to relief under 42 U.S.C. 1983 as to both the vehicle and its contents.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants for actual damages, consequential damages, statutory damages, fees and costs of suit, including reasonable attorney's fees pursuant to 42 U.S.C. 1988, and such other and further relief as the Court deems just and proper.

<u>**COUNT IV**</u>
**Conversion**
**(As Against Transit Only)**

109.    Plaintiffs incorporate herein by reference the allegations set forth in the above paragraphs, as if fully set forth herein.

110.    Plaintiffs owned The Vehicle, and the personal property therein, and, in accordance with their rights, were entitled to immediate possession of The Vehicle and the personal property therein.

111.    Transit has unlawfully interfered with Plaintiffs' right to possess The Vehicle by refusing to release it to Plaintiffs.

112.    By these actions, Transit has purposefully, knowingly, and/or intentionally exercised dominion and control over The Vehicle and the personal property therein by wrongfully interfering with Plaintiffs' rights to possession of The Vehicle and the property therein.

113.    Plaintiffs have suffered, and continue to suffer, damages as a result of Transit's actions.

**WHEREFORE**, Plaintiffs pray for judgment against Defendant Transit for actual damages, consequential damages, punitive damages, fees and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

Dated: July 16, 2025

**NORRIS, McLAUGHLIN, PA**

By: */s/Nicholas A. Duston*
NICHOLAS A. DUSTON
7 Times Square, 21st Fl.
New York, NY 10036
naduston@norris-law.com
(908)-722-0700
*Attorneys for Plaintiffs*

# EXHIBIT 1



Christopher Sapienza
Commissioner of Police

**CITY OF YONKERS
POLICE DEPARTMENT**

MATTHEW ANTHONY TAYLOR
7 DANA RD
DANBURY , CT 06811-2914
**Case Number: 24035144**
*ABANDONED AUTO…TIME SENSITIVE NOTIFICATION*

To Whom It May Concern,

You are hereby notified regarding the following vehicle;
2020 BMW 330XI 4DRBLACK
Plate(s):  NOV

**VIN: 3MW5R7J01L8B13515**

This vehicle was impounded by The Yonkers Police Department on **3/11/202**
Tow Company –**Transit Towing (914) 779 – 7666**

This vehicle has not been claimed.

Therefore Ten (**10**) days from this date April 25, 2024, the vehicle will be dispo
accordance with The New York State Vehicle and Traffic Law Section 1224.

Upon receipt of this letter please notify the Abandoned Auto Unit at **914-377-7**
wish to claim this vehicle.

**\*\*If the vehicle has already been claimed, please disregard this letter.\*\***

P.O. Sherding #538
Abandoned Vehicle Unit
730 East Grassy Sprain Road
Yonkers, N.Y. 10710
Phone: 914-377-7391
Fax: 914-377-7484



# EXHIBIT 2

| NEW YORK Department of Motor Vehicles | **VEHICLE REGISTRATION/ TITLE APPLICATION FOR DEALER SALES** This form is available at dmv.ny.gov | Office Use Only | Class |
|---|---|---|---|

Batch File No. 40520 20 AF7

☐ Orig ☐ Activity ☐ Renewal ☐ Lease Buyout
☐ Dup ☐ Activity W/RR ☐ Renew W/RR ☐ Sales Tax with Title

**I WANT TO:** ☒ REGISTER A VEHICLE   ☐ RENEW A REGISTRATION   ☐ GET A TITLE ONLY
☐ CHANGE A REGISTRATION   ☐ REPLACE LOST OR DAMAGED ITEMS   ☒ TRANSFER PLATES

Plate Number: LHC4185

**1** NAME OF PRIMARY REGISTRANT (Last, First, Middle or Business Name)   Registrant Type: ☐ Individual ☐ Co-Registrants ☐ Corp/Organization

Anthony Sciascia

NYS driver license ID number of PRIMARY REGISTRANT ☐ No ID #: 4 9 5 9 6 5 3 0 6

DATE OF BIRTH   Month 12 Day 28 Year 1975

GENDER: Male ☒ Female ☐

NAME OF CO-REGISTRANT (Last, First, Middle)

NYS driver license ID number of CO-REGISTRANT ☐ No ID #

DATE OF BIRTH   Month   Day   Year

GENDER: Male ☐ Female ☐

NAME CHANGE? ☐ YES ☐ NO   ADDRESS CHANGE? ☐ YES ☐ NO

TELEPHONE NUMBER Area Code

MOBILE TELEPHONE NUMBER

FORMER NAME (if name was changed you must present proof)   EMAIL

THE ADDRESS WHERE PRIMARY REGISTRANT GETS MAIL (Include Street Number and Name, Rural Delivery or box number. This address will be on the document.)   Apt No   City or Town   State   Zip Code   County of Residence

THE ADDRESS WHERE PRIMARY REGISTRANT RESIDES IF DIFFERENT FROM THE MAILING ADDRESS (DO NOT GIVE A P.O. BOX)
9 Ridge Road Dobbs Ferry   Apt No   City or Town Dobbs Ferry   State NY   Zip Code 10522   Westchester

**2** VEHICLE IDENTIFICATION NUMBER: 3MW5R7J0L8B13515   VEHICLE DESCRIPTION 2020 BMV

Body Type (mark one): ☐ 2 Door ☒ 4 Door ☐ Pickup ☐ Van
☐ Convertible ☐ Suburban/SUV ☐ Trailer
☐ Motorcycle ☐ Tow ☐ Other

Color 1 Black   Color 2   Unladen Weight 3764

Type of Power (Fuel): ☒ Gas ☐ Diesel ☐ Electric ☐ Flex ☐ CNG ☐ Propane ☐ None

Cylinders 4   For trailers & commercial vehicles Maximum Gross Weight   Adult Seating Capacity (including driver) 5   Odometer Reading in Miles 74,749   Office Use Only Mileage Brand (A) E N   For commercial vehicles Axles   Distance

CHANGES: Describe any vehicle changes and the reasons for the changes. (SUBMIT NYS TITLE IF ISSUED)

**3** If the OWNER of the vehicle is DIFFERENT from the REGISTRANT, the OWNER must complete this section.

NYS driver license number of OWNER   NAME OF CURRENT OWNER(s) (Last, First, Middle)

DATE OF BIRTH   Month   Day   Year

☐ No ID #   NAME OF CO-OWNER →

GENDER: Male ☐ Female ☐

THE ADDRESS WHERE OWNER GETS MAIL (Include the Street Number and Name, Rural Delivery or box number)   Apt No.   City or Town   State   Zip Code   County

(Signature of owner or authorized person, and signature of co-owner if applicable)   (Date)

**DEALER USE ONLY - LIEN FILING - Alterations are not allowed in the lienholder section below**

Choose one → ☒ There are no liens   ☐ I am filing for the lienholder(s) listed below

Lien Filing Code   Lienholder Name   Lienholder Mailing Address (number, street, city, state, zip code)

**NEW YORK DEALERS ONLY**

Did you issue plates to the vehicle? ☐ Yes ☒ No   Plate Number   Reg Class   Date Temp Issued   Facility ID Number 7025691

DEALER CERTIFICATION: I certify that all information provided on this application is true. I take responsibility for the integrity of the papers delivered to the Motor Vehicles office.   (Signature of Dealer or Authorized Representative)

**OFFICE USE ONLY**

| New Plate | | New Class | Ins Co Code | Special Conditions |
|---|---|---|---|---|
| Sales Tax | Status | Value ($) | Rate | Out of State | Lien | Lien Number | Jurisdiction | Audit | Lien Release | AT BV CF CO EO EX FL IO NE NF NR NU OP OV PA PI PK RC RE SC SO SP SR SS SV TE TL TO TP TR TX XR X6 WO |

Prior Owner

Proof Submitted

Reg/Title   State

MV 82DEAL (2/21)   COMPLETE BOTH SIDES   PAGE 1 OF 2

**❹** ADDITIONAL VEHICLE INFORMATION ━━━▶ *QUESTIONS 1-4 MUST BE COMPLETED.*

1. Has the vehicle been wrecked, destroyed, or damaged to such an extent that the total estimate, or actual cost, of parts and labor to rebuild or reconstruct the vehicle to the condition it was in before an accident, and to make the vehicle legal to operate on the road or highways, is more than 75% of the retail value of the vehicle at the time of loss?

   ☒ No   ☐ Yes - (If you marked **Yes** the vehicle must have an anti-theft examination before it is registered. The title that is issued will have the statement "Rebuilt Salvage" on it.)

2. Is this vehicle registered for your personal use? ☒ Yes   ☐ No
   *If you marked "Yes", go to the next question (question 3). If you marked "No", check any of these boxes that apply:*

   ☐ This vehicle is a passenger vehicle that will be used for hire with a driver and will be operated in the following location(s):
   　☐ New York City (NYC)   ☐ A jurisdiction that is not NYC that regulates taxis   ☐ A jurisdiction that does not regulate taxis

   ☐ This vehicle is used as a contracted carrier.

   ☐ This vehicle is a passenger vehicle that is rented without a driver.

   ☐ This vehicle requires a permit for commercial operation. (Mark the box of the type of permit that was issued and write the permit number on the line.) ☐ NYS DOT Permit No. _____   ☐ Federal DOT Permit No. _____

   ☐ The government owns this vehicle.

   ☐ This vehicle is used as (mark one) ☐ an ambulance   ☐ an ambulette   ☐ a hearse or invalid coach
   　If payment is received to carry passengers, mark this box.☐

   ☐ This vehicle is used exclusively as a hearse.   If payment is received to carry passengers, mark this box☐

   ☐ This vehicle is a commercial tow truck with a gross vehicle weight rating of at least 8,600 pounds.

   ☐ This vehicle is used only as a farm vehicle. *(form MV-260F, Part 1, must be attached)*

   ☐ This vehicle is used only as an agricultural truck or agricultural trailer.

   ☐ This vehicle is subject to the Department of Transportation inspection requirements for the carriers that transport passengers. (For more information, refer to form MV-82.1P, "Inspection Requirements for Carriers Transporting Passengers".)

3. Has this vehicle been modified from the original manufacturer specifications? ☐ Yes   ☒ No   If "Yes", describe the modifications:

   _____

4. Was this vehicle altered to increase the capacity beyond that provided by the manufacturer by method of extended chassis, lengthened wheel base, or a lengthened seating area? ☐ Yes   ☒ No

   If **YES**, do you have the required Federal Alterer's Safety Certification (normally found on the door jamb) in accordance with VTL §401? ☐ Yes   ☐ No

   If **YES**, and the vehicle was altered on or after 1/1/2021, is this altered vehicle equipped with safety belts at all occupant seating positions? ☐ Yes   ☐ No   ☐ N/A, vehicle altered prior to 1/1/2021

   * If your vehicle was altered or stretched to increase the passenger capacity, you must present to the DMV issuing office a photograph or copy of all labels or plates (normally put on the driver's side door). If the vehicle was altered or stretched and now has an adult seating capacity of 9 or more adults (including the driver), you must show the original NYS DOT Inspection Receipt OR a NYS DOT Exemption Letter.

5. This vehicle is a **pick-up truck** with an unladen weight that is a maximum of 6,000 pounds. This vehicle is never used for commercial purposes and does not have advertising on any part of it. I want (mark one): ☐ Passenger Plates   ☐ Commercial Plates

---

**❺** **CERTIFICATION:** I certify that the information I have given on this application and on any documentation provided in support of this application is true and complete. I certify that the vehicle is fully equipped as required by the Vehicle and Traffic Law, and has passed the required New York State inspection, or has qualified for a time extension (form VS-1077) and will be inspected within 10 days. I also certify that appropriate insurance coverage is in effect, and that the vehicle will be operated in accordance with the Vehicle and Traffic Law. If I am applying for replacement registration items, I certify that the registration is not currently under suspension or revocation. If I have plates in a series reserved for a special group, I certify that I am still eligible to receive them, and that I have only one set of these plates. *If I am using a credit card for payment of any fees in connection with this application, I understand that my signature below also authorizes use of my credit card.*

**WARNING:** Intentionally making a false statement or providing false or misleading information in connection with this application is a criminal offense that may subject you to prosecution under the law.

Print Name Here ▸ *Anthony Sciascia*
　　　　　　　　(Print Name in Full - if registering for a corporation, print your full name and title)

Sign Here ▸ *asciascia*
　　　　　　　　(Sign Here)

Print Additional Name Here ▸ _____
　　　　　　　　(Print Name in Full)

Additional Signature Sign Here ▸ _____
　　　　　　　　(Sign Here - Additional signature required for a partnership and registering the vehicle in more than one name.)

New York State Department of Motor Vehicles
## TRANSACTION RECEIPT

**Transaction ID No.** E090224862024

E090224862024

## TRANSACTION INFORMATION

| NYS Photo ID Submitted | Dealer Issued Plate | New Plate Number Issued | Plate Number being Transferred | VIN |
|---|---|---|---|---|
| ☐ Yes ■ No | ☐ Yes ■ No | N/A | N/A | 3MW5R7J01L8B13515 |
| Recording LIEN | LIEN Filing Code | | Co-Purchaser | Different Owner |
| N/A | | | ☐ Yes ■ No | ☐ Yes ■ No |

| Year | Make | Model | Color1 | Color2 | Title Brand | |
|---|---|---|---|---|---|---|
| 2020 | BMW | 330XI | BK | N/A | USED | |
| Odometer Reading | | | Odometer Brand | | Seating Capacity | |
| 0074749 | | | Actual Mileage | | 5 | |

## VEHICLE TRANSFER HISTORY

COO Review Required: ☐ Yes ■ No

| Seller | Purchaser | Selling Facility | Transfer Date | Document Type | Left NY State |
|---|---|---|---|---|---|
| TRANSIT AUTO TOWINGINC | Anthony Sciascia | 7025091 | 05 / 17 / 2024 | EMV50 | No |
| CITY OF YONKERS | TRANSIT AUTO TOWINGINC | | 03 / 11 / 2024 | OTHR | No |

## Any change or Alteration voids this receipt