## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW TAYLOR and REY MORELL, individually and on behalf of all others similarly situated, | (Electronically Filed) |
| Plaintiffs, | Civil Case No.: 7:25-cv-05861-KMK |
| v. | |
| THE CITY OF YONKERS, TRANSIT AUTO TOWING INC., MICHAEL SPANO individually, ANTHONY LANDI individually, STEVEN LEVY individually, CHRISTOPHER SAPIENZA individually, AND JOHN DOES 1-5, | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

**NORRIS McLAUGHLIN P.A.**
Nicholas A. Duston, Esq.
7 Times Square, 21st Fl.
New York, NY 10036
(212) 808-0700
naduston@norris-law.com
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 2

STANDARD OF REVIEW ................................................................................................ 4

ARGUMENT ...................................................................................................................... 5

   I.     THERE IS NO BASIS TO DISMISS PLAINTIFF MORELL'S CLAIMS ................. 5

    A.  The Complaint Contains Sufficient Allegations of Morell's Protected
       Property Interest ..................................................................................................... 6

    B.  The Complaint's Allegations Demonstrate that Morell has Article III Standing .......... 10

   II.    THE COMPLAINT'S ALLEGATIONS ARE SUFFICIENT TO SUSTAIN
       LIABILITY AGAINST THE INDIVIDUAL DEFENDANTS .................................. 13

CONCLUSION ................................................................................................................... 17

WORD COUNT CERTIFICATION .................................................................................. 19

# TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

Alexandre v. Cortes,
    140 F.3d 406 (2d Cir. 1998).................................................................................6, 7, 8

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)..........................................................................................7, 8, 13

Atuahene v. City of Hartford,
    10 F. App'x 33 (2d Cir. 2001).................................................................................16

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)................................................................................................13

Bowser v. City of New York,
    No. 23 Civ. 6183, 2025 WL 1707174 (E.D.N.Y. 2025)..........................................16

Calvo v. City of New York,
    No. 14-CV-7246 (VEC), 2017 WL 4231431 (S.D.N.Y. Sept. 21, 2017)..........11, 12

Calvo v. City of New York,
    No. 14-CV-7246(VEC), 2018 WL 1633565 (S.D.N.Y. Apr. 2, 2018) ...............11, 12

Decastro v. City of New York,
    No. 16-CV-3850 (RA), 2019 WL 4509027 (S.D.N.Y. Sept. 19, 2019) ...........10, 11, 12

Fuentes v. Shevin,
    407 U.S. 67 (1972).................................................................................................6, 8

Giggetts v. Cnty. of Suffolk,
    No. 2:19-CV-4885 (DRH) (ST), 2022 WL 1046311 (E.D.N.Y. Apr. 7, 2022)......16

Greene v. City of New York,
    773 F.Supp.3d 94 (S.D.N.Y. 2025) .................................................................15, 16

Isbell v. City of New York,
    316 F. Supp. 3d 571 (S.D.N.Y. 2018)......................................................................4

J.S. ex rel. N.S. v. Attica Cent. Schs.,
    386 F.3d 107 (2d Cir. 2004).....................................................................................4

Kamal v. Pressler, Felt & Warshaw, LLP,
    No. 1:23-CV-10487-MKV, 2025 WL 919505 (S.D.N.Y. Mar. 25, 2025) ...............4

Kaplan v. Lebanese Canadian Bank, SAL,
    999 F.3d 842 (2d Cir. 2021)...................................................................................13

<u>Kassner v. 2nd Ave. Delicatessen Inc.</u>,
    496 F.3d 229 (2d Cir. 2007)............................................................................................4

<u>Murphy v. City of New York</u>,
    719 F. Supp. 3d 357 (S.D.N.Y. 2024)....................................................................4, 5, 12

<u>Pangburn v. Culbertson</u>,
    200 F.3d 65 (2d Cir 1999).........................................................................................6, 8

<u>Safepath Sys. LLC v. N.Y.C. Department of Education</u>,
    563 F. App'x 851 (2d Cir. 2014) .........................................................................8, 9, 10

<u>Santander Consumer USA, Inc. v. City of Yonkers</u>,
    No. 22-CV-8870 (KMK), 2024 WL 4817649 (S.D.N.Y. Nov. 18, 2024)..............................15

<u>Santander Consumer USA, Inc. v. City of Yonkers</u>,
    No. 22-cv-8870(KMK) (S.D.N.Y. Mar. 28, 2024), ECF Nos. 80-2 and 80-6.......................15

<u>Sommerville v. Wright</u>,
    2014 WL 794275 (E.D.N.Y. 2014).............................................................................6, 8

<u>Stone #1 v. Annucci</u>,
    No. 20-CV-1326 (RA), 2021 WL 4463033 (S.D.N.Y. Sept. 28, 2021) ................................13

<u>United States v. One 1982 Porsche 928, Three-Door, License Plate 1986/NJ
    Temp./534807 (auto.)</u>,
    732 F. Supp. 447 (S.D.N.Y. 1990) ...........................................................................11

<u>West Farms Associates v. State Traffic Commission</u>,
    951 F.2d 469 (2d Cir. 1991)...............................................................................8, 9, 10

## STATE CASES

<u>Portillo v. Carlson</u>,
    167 A.D.3d 792 (2nd Dept. 2018) ...........................................................................6, 8

## STATUTES

Yonkers City Code § 111-15(B).....................................................................................4, 14

## RULES

Fed. R. Civ. P. 8.......................................................................................................1, 8, 13

Fed. R. Civ. P. 9...........................................................................................................13

Fed. R. Civ. P. 12(b)(1)...........................................................................................2, 4, 5, 10

Fed. R. Civ. P. 12(b)(6)................................................................................................2, 4, 5

## <u>CONSTITUTIONAL PROVISIONS</u>

U.S. CONST. AMEND. XIV .................................................................................................................6

Plaintiffs Matthew Taylor ("Taylor") and Rey Morell ("Morell") (Taylor and Morell collectively, "Plaintiffs") hereby submit this Memorandum of Law in Opposition to the motions to dismiss by Defendants City of Yonkers ("Yonkers"), Michael Spano ("Spano"), Anthony Landi ("Landi"), Steven Levy ("Levy"), and Christopher Sapienza 's ("Sapienza"), (and, together with Spano, Landi and Levy, the "Individual Defendants", and, collectively with Yonkers, the "Municipal Defendants") Motion to Dismiss (ECF No. 36) ("Municipal Defendants' Motion") and Defendant Transit Auto Towing, Inc.'s ("Transit," collectively with Municipal Defendants, "Defendants") Motion to Dismiss (ECF No. 35) ("Transit's Motion") and respectfully request that this Court deny both motions in their entirety.

## PRELIMINARY STATEMENT

Defendants' arguments are fundamentally flawed because they mischaracterize the nature of the allegations and misapply the relevant pleading standards. Defendants repeatedly label specific, factual allegations as "conclusory," when they are not, in essence attempting to impose a heightened pleading requirement that is neither supported by Rule 8 nor the applicable facial plausibility standard. The Complaint sets forth in detailed, plausible factual statements that Yonkers has an unconstitutional policy, along with the specific roles of, and direct involvement by, each Individual Defendant in crafting and implementing that policy. These well-pleaded facts are ***not*** "conclusory," and give rise to a plausible inference of the Individual Defendants' liability and provide the Individual Defendants with ample and fair notice of the claims against them.

Defendants' reliance on irrelevant case law and semantic critiques does not undermine the sufficiency of Plaintiffs' allegations. The Complaint does not merely recite legal elements, nor does it rely on generalized assertions of legal conclusions. Instead, it presents a clear narrative of each defendant's conduct and involvement in the unconstitutional scheme. Plaintiffs have met the

plausibility standard required at this stage, and Defendants' attempts to sidestep the factual substance of the Complaint are unavailing.

This Court should also deny Defendants' motions as to Plaintiff Morell which seek to have this Court make new law by holding a property interest is only protectable if it is recorded. That position is unsupported by controlling case law. Unrecorded property interests are nonetheless cognizable property interests, and the mere fact that his interest is not readily identifiable in a public record does not permit Defendants to deprive Morell of his property interest in this vehicle. Nor does the unrecorded nature of Morell's property interest prevent Morell from seeking redress under Section 1983. The crux of Defendants' reasoning is the flawed presupposition that Morell's payments for the car and use of the car could never result in Morell having a protected property interest in the vehicle, merely because his interest is not recorded on any particular document relating to the vehicle. Because this assumption is wrong, the allegations in the Complaint are of course more than sufficient establish Morell's property interest, the bounds of which Defendants are capable of exploring in discovery.

Should the Court find that the allegations in the Complaint are insufficiently specific as to either issue, dismissal should be without prejudice as amendment is not futile, especially as to the Individual Defendants' role, the contours of which are entirely in Defendants' possession. As such, dismissal with prejudice under Rules 12(b)(6) nor 12(b)(1) would not be appropriate.

## **FACTUAL BACKGROUND**

Plaintiffs filed the Complaint in this action on July 7, 2025, seeking redress for violations of their respective property rights under the Constitution of the United States. ECF No. 1 ¶¶ 1–7. Plaintiffs are co-owners of a 2020 BMW bearing VIN 3MW5R7J01L8B13515 (the "Vehicle"). Id. at ¶¶ 4, 20, 21.

The Complaint contains the following allegations regarding Morell's ownership interest in

the Vehicle:

> 4.  Here, Yonkers seized a 2020 BMW bearing VIN 3MW5R7J01L8B13515 (the "Vehicle") owned by Plaintiffs. The seizure was performed incident to the arrest of Rey Morell for a traffic violation, which was ultimately dismissed. Yonkers seized the Vehicle by directing Transit to tow and detain the vehicle until Yonkers gave Transit further instructions. Plaintiffs tried to recover the vehicle by going to both the Yonkers police precinct and Transit, but they were rebuffed. No opportunity for a hearing was afforded to Plaintiffs—with adequate notice of that hearing--where Plaintiffs could have their request for release of their vehicle reviewed by a neutral decisionmaker.
>
> . . . .
>
> 20.  Until the actions challenged by this lawsuit, Plaintiff Taylor was the titled owner of the Vehicle.
>
> 21.  Until the actions challenged by this lawsuit, Plaintiff Morell was, by agreement with Plaintiff Taylor, a co-owner with a substantial interest in the Vehicle by virtue of having invested $14,000 to purchase the Vehicle and having used it regularly to, *inter alia*, commute to work.  Plaintiff Morell also had significant and valuable personal property inside the Vehicle at the time it was seized, including but not limited to expensive sneakers, his clothes, his daughter's clothes, and some of the ashes of his deceased father.

Id.

Yonkers regularly seizes vehicles as part of its law enforcement activity but does not

dispose of the seized vehicles consistent with the basic due process requirements of notice and a

hearing.  Id. at ¶¶ 1–6.  Instead, Yonkers transfers the seized vehicles to a towing company that

tows and stores the seized vehicle.  Id.  This is Yonkers's policy and practice, and has done this to

hundreds of vehicles.  Id. at ¶¶ 1–6, 56.

Plaintiffs' Vehicle was seized by Yonkers incident to arrest and transferred to Transit,

pursuant to a contract between Yonkers and Transit whereby Transit takes possession of seized

vehicles in exchange for its towing services.  Id. at ¶¶ 1–6, 22–25, 42, 98–99.  Yonkers and Transit

refused to return the Vehicle to Plaintiffs pursuant to Yonkers's impounded vehicle policy.  Id. at

¶ 26.  Neither Transit nor Yonkers secured a neutral review of the seizure of the Vehicle, before or after the Vehicle was seized.  <u>Id.</u> at ¶¶ 44–47.  Plaintiffs never recovered possession of the Vehicle.  <u>Id.</u> at ¶ 49.

The Individual Defendants, Spano, Landi, Levy, and Sapienza, are Yonkers's mayor, deputy mayor, deputy mayor, and police chief, respectively.  <u>Id.</u> at ¶¶ 13–18.  The Yonkers City Code explicitly states, "[t]he Mayor, after having received recommendations from the Police Commissioner, **shall** designate up to six qualified" towing companies to "maintain an impound area within the City of Yonkers and to remove an impounded vehicle thereto when and as directed by the Police Department."  <u>Id.</u> at ¶ 52.  Spano sends one of his two deputy mayors, Landi or Levy, to each meeting of the Board of Contract and Supply.  <u>Id.</u> at ¶ 53.  The Board of Contract and Supply approves all tow contracts, including Transit's contract for towing vehicles.  <u>Id.</u>  Sapienza maintains a written policy which provides for impounding vehicles in numerous scenarios, and implements the policy, custom, and practice of disposing of vehicles on ten (10) days' notice by turning over vehicles' titles to Transit.  <u>Id.</u> at 1 ¶¶ 26–42, 44–47, 54, Ex. 1, Ex. 2.

### STANDARD OF REVIEW

The Court must consider allegations in the Complaint as true when considering Transit's Motion to Dismiss.  Courts considering motions to dismiss under Rule 12(b)(6) must treat all well-pleaded facts as true and must draw all reasonable inferences in the favor of the non-moving party.  <u>See</u> <u>Isbell v. City of New York</u>, 316 F. Supp. 3d 571, 582 (S.D.N.Y. 2018) (citing <u>Kassner v. 2nd Ave. Delicatessen Inc.</u>, 496 F.3d 229, 237 (2d Cir. 2007)).  Likewise, courts considering motions to dismiss under Rule 12(b)(1) also treat all well-pleaded facts as true.  <u>Murphy v. City of New York</u>, 719 F. Supp. 3d 357, 365 (S.D.N.Y. 2024) (citing <u>J.S. ex rel. N.S. v. Attica Cent. Schs.</u>, 386 F.3d 107, 110 (2d Cir. 2004)); <u>Kamal v. Pressler, Felt & Warshaw, LLP</u>, No. 1:23-CV-10487-MKV, 2025 WL 919505, at *3 (S.D.N.Y. Mar. 25, 2025) ("In assessing the plaintiff's assertion of

standing, courts accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party.").  However, courts do not draw inferences favorable to either party on Rule 12(b)(1) motions.  See Murphy v. City of New York, 719 F. Supp. 3d 357, 365 (S.D.N.Y. 2024).

<u>ARGUMENT</u>

Defendants' motions should be denied because Plaintiffs have properly stated claims for relief against all Defendants, including that Morell has Article III standing to pursue his claims. Both the Municipal Defendants' Motion and Transit's Motion strain controlling law to argue that Plaintiffs' claims should be dismissed, but both motions lack support and suffer from wanting legal analyses.  Both the Municipal Defendants' Memorandum of Law ("Muni Br.") (ECF No. 38) and Transit's Memorandum of Law ("Transit Br.") (ECF No. 41) accuse the Complaint of using merely "conclusory allegations" despite there being very specific facts pled, as opposed to mere legal conclusions, in the Complaint.  Further, both motions claim that this Court lacks subject matter jurisdiction over Morell's claims despite all relevant authority stating the opposite.  As set forth below, the only appropriate disposition of the pending motions is to deny them in their entirety.

**I.    THERE IS NO BASIS TO DISMISS PLAINTIFF MORELL'S CLAIMS**

Dismissal of Morell's claims under Rule 12(b)(6) and/or Rule 12(b)(1) is inappropriate because the Complaint properly alleges claims for relief related to Morell's property interest in the Vehicle.  Defendants specifically seek to dismiss Morell's claims, and not Taylor's, because Morell is not a titled or registered owner of the Vehicle.  See Muni Br. pp. 7–8; Transit Br. p. 4. As stated in Defendants' Memoranda of Law, the only basis for Defendants' contentions that Morell fails to state a claim for relief and that this Court lacks subject matter jurisdiction is that "[Morell] Lacks a Protected Property Interest."  Transit Br. p. 4; see Muni Br. pp. 7–10.

Thus, Defendants essentially concede that should this Court find that Morell has appropriately pled a protected property interest in the Vehicle, Morell has stated a claim for relief and this Court has subject matter jurisdiction. Defendants offer no evidence to support their contentions and fail to provide relevant legal analyses. As explained below, the Complaint contains sufficient allegations of that Morell has a protected property interest in the Vehicle and Article III Standing to bring suit, and both motions should be denied.

A.    <u>**The Complaint Contains Sufficient Allegations of Morell's Protected Property Interest**</u>

The allegations in the Complaint are sufficient to establish that Morell had a property interest in the Vehicle. The law in Second Circuit is well-settled on this issue. A co-owner, even one that is not listed on the title, has a right to use and possess a vehicle, and that right is protected by the Fourteenth Amendment. <u>See</u>, <u>e.g.</u>, <u>Sommerville v. Wright</u>, 2014 WL 794275, *6 (E.D.N.Y. 2014) (citing <u>Fuentes v. Shevin</u>, 407 U.S. 67, 86 (1972)). A person's name appearing on a document of title merely creates a rebuttable presumption that such person is the owner of the property in question. <u>See</u>, <u>e.g.</u>, <u>Portillo v. Carlson</u>, 167 A.D.3d 792, 793 (2nd Dept. 2018) ("A certificate of title is prima facie evidence of ownership . . . However, this presumption may be rebutted by evidence that another individual owns the subject vehicle."). "The Second Circuit has repeatedly found that even an individual who does not hold title at the time of a vehicle's seizure has a sufficient interest… to bring a due process claim. <u>Id.</u> (citing <u>Pangburn v. Culbertson</u>, 200 F.3d 65, 70 (2d Cir 1999)). Due process does not merely "safeguard… the rights of undisputed owners, but also the rights of those individuals with any significant property interest…" <u>Somerville</u>, 2014 WL 794275 at * 6. Where a person paid "substantial sums," they have "a protected property interest in the car." <u>Alexandre v. Cortes</u>, 140 F.3d 406, 411 (2d Cir. 1998). It

is also "improper[]" to require a claimant to bear the burden of proving "he had a lawful title… in such property" as is seized by a municipality.  Id. at 409.

The Complaint alleges that Morell and Taylor agreed they would be co-owners of the Vehicle.  ECF No. 1 ¶21.  Morell invested $14,000 in the purchase of the Vehicle and would regularly use the Vehicle.  Id.  The Complaint further alleges that Morell had personal property within the Vehicle at the time it was improperly taken by Transit.  Id.  There is no legitimate debate that $14,000 is a "substantial sum," see Alexandre, 140 F.3d at 411, and therefore these allegations are sufficient to establish that Morell had a protectable property interest in the Vehicle.

Defendants' perfunctory analyses of protected property interests do not detract from the foregoing conclusion.  Transit contends that Plaintiffs' allegations as Morell's ownership interest in the Vehicle are "conclusory" merely because Morell does not allege that he is the titled or registered owner of the Vehicle, or that he has a duly recorded lien.[1]  Transit Br. p. 4.  Transit further asserts that the Second Circuit and district courts require this type of allegation to maintain a §1983 due process and taking claims, without citing any support for this position.  Id.  The absence of citation is because this is not the law, but rather an incorrect hypothesis by Transit which Transit apparently failed to research, having been rejected by cases analyzing the issue.

Municipal Defendants fair no better, citing irrelevant authority and painting plainly factual, specific allegations as "conclusory."  In the words of Inigo Montoya, Defendants "keep using that word," but the term 'conclusory' does "not mean[] what [they] think it means."  THE PRINCESS BRIDE (20th Century Fox, 1987).  The Supreme Court's concern with "conclusory" pleadings

---

[1] But one of many examples of Defendants using the word "conclusory," as though merely saying the word will make it true.  Morell's interests are not pled in a "conclusory" way, by, for example, simply stating "Morell has a property interest in the vehicle."  In fact, Morell's interest is pled in a fact-based, specific and plausible manner by stating he has an agreement with Taylor and invested $14,000 in the purchase of the Vehicle.

relates to "legal conclusions" which may "provide the framework of a complaint," but must also be supported "by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The Court stated that "[t]hreadbare recitals *of the elements of a cause of action*, supported by mere conclusory statements, do not suffice," obviously applying the "conclusory" label to the recitation of the legal elements of a cause of action, ***not*** applying that label to factual statements at all. Id. A complaint must merely have "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678.

That Morell paid $14,000 towards the purchase price of the Vehicle is a fact, not a legal conclusion. That Morell uses the Vehicle is a fact, not a legal conclusion. That Morell and Taylor have an agreement by which Morell is a co-owner of the Vehicle is a fact, not a legal conclusion. These allegations may be stated succinctly (as required by Rule 8), but a lack of verbosity does not equate to a statement being "conclusory" at all. Plaintiffs are not merely concluding the defendants wronged them, and Defendants repeatedly misusing the word "conclusory" does not make it true.

Further, as a matter of law, a litigant being an unregistered co-owner of a vehicle does not prevent that litigant from having a protected property interest in that vehicle. See, e.g., Sommerville, 2014 WL 794275 at *6; Portillo, 167 A.D.3d at 793; Alexandre v. Cortes, 140 F.3d at 409, 411; see also Fuentes v. Shevin, 407 U.S. at 86; Pangburn, 200 F.3d at 70.

Defendants rely almost entirely on West Farms Associates v. State Traffic Commission, 951 F.2d 469, 472 (2d Cir. 1991) and Safepath Sys. LLC v. N.Y.C. Department of Education, 563 F. App'x 851, 854 (2d Cir. 2014) to support their spurious contention that an unrecorded property interest is not a "protected property interest" that can be the subject of a due process or takings claim. Transit Br. pp. 1–2, 4; Muni Br. pp. 8–10. However, these cases do not support that a

property interest is not a "protected property interest" merely because such interest is not recorded. Instead, these cases deal with plaintiffs who allege property rights that arise via statute, are highly distinguishable, and have no application in the instant action.

West Farms dealt with a mall owner's challenge to a state traffic commission's process for issuing a traffic certificate to the mall owner's competitor, whose property was six miles away from the mall owner's property. The mall owner theorized its property interests were deprived without due process of law based on the traffic commissions handling of the competitor's application for a traffic certificate. The mall owner posited that it had gained a property interest from a state environmental statute that allowed interested parties to bring up environmental concerns related to new developments that may affect such interested parties. In dismissing the action, the Second Circuit held that the mall owner's right to be heard on the environmental issues of a new development did not constitute a protected property right. West Farms, 951 F.2d at 472–73. The court reasoned that the state environmental statute conveyed a "universal benefit," which are not property interests that are protected by the Due Process Clause. Id. Unlike the mall owner in West Farms, Morell paid for the property at issue, and Morell's interest in the Vehicle as a co-owner is not akin to a universal benefit conveyed by statute to the mall owner. West Farms has no application in the instant action.

Safepath is likewise entirely irrelevant to the Court's analysis here. In Safepath, patent holders of gymnasium folding partitions claimed that the state statutes and regulations that mandated certain schools to use their partitions created a property right, which was violated without due process when the schools stopped using such partitions and administrators failed to enforce the mandates. The Second Circuit held that the patent holders did not have a property right protected by the Due Process Clause because a statutory benefit is not a protected entitlement

if it may be denied at the government's discretion or if the law does not create an individual entitlement.  Safepath, 563 Fed. App'x at 855.  The patent holders did not have an individual entitlement that guaranteed an ongoing employment, contractual, or vendor relationship with the government and the government had the discretion to change the mandate.  Id.  Thus, the court concluded that the patent holders did not have protected property interest.  Id.  Like West Farms, the court's opinion in Safepath has no relevance or application to the instant case.  Being the co-owner of a vehicle, as the Complaint alleges Morell was, is not like deriving a property interest from a statutory scheme.  That Defendants rely on these cases to support dismissal of Morell's claims is baffling.

**B.    The Complaint's Allegations Demonstrate that Morell has Article III Standing**

Morell's interest in the Vehicle, as alleged, is sufficient to convey Article III standing upon him for his claims.  Transit haphazardly asserts that Plaintiffs' allegations as to Morell's interest in the Vehicle lack the "indicia of reliability" courts require for Article III standing but does not lift a finger to explain how the allegations fall short of this standard.  Municipal Defendants discuss the issue with only a slightly greater (than zero) amount of detail, but their analysis is misguided.

As a practical matter, Plaintiffs' allegations that Morell has an agreement with Taylor whereby Morell helped pay for the Vehicle and is a co-owner thereof is more than sufficient indicia that Morell is a bona fide owner of the Vehicle at this stage of the litigation.  Defendants cite to a single case regarding "indicia of reliability" that they complain is lacking and fail to analyze the case or the framework of Article III standing at all.  See Muni Br. p. 8 (citing Decastro v. City of New York, No. 16-CV-3850 (RA), 2019 WL 4509027, at *5 (S.D.N.Y. Sept. 19, 2019)); Transit Br. p. 5 (same).

Decastro is highly distinguishable from the instant case, e.g., it dealt with a motion to certify a class, not a motion to dismiss under Rule 12(b)(1), and Defendants cite only dicta from

the opinion.  Decastro, 2019 WL 4509027, at *5.  But even more importantly, Decastro contradicts Defendants' claim that Morell's financial interest in the Vehicle is insufficient to create a protected property interest.  See id. at *5 ("[T]rue ownership interest in property can be demonstrated by various means including proof of a financial stake in the property").  In Decastro, the court denied a putative class plaintiff's motion to certify a class of car owners.  2019 WL 4509027, at *1.  The Decastro court did NOT find that the putative class of car owners lacked Article III standing to bring their claims; it assumed the opposite.  Id. at *6 ("[B]ecause the evidence of curious ownership records and fraud are more appropriately addressed in assessing class membership, the Court will, as the Calvo court did, assume without deciding that all members of the class have standing."). [2]

That court was presented with evidence that the putative class possibly contained members that were mere "straw owners."  Id. at **5–6.  Based on two cases which considered similar issues, the Decastro court noted that the presence of "straw owners," which it defined as a person who holds title to the vehicle for somebody else, could possibly undermine Article III standing.  Id. at *5.  However, in its discussion of straw owners, the Decastro court specifically cited United States v. One 1982 Porsche 928, Three-Door, License Plate 1986/NJ Temp./534807 (auto.), 732 F. Supp. 447, 451 (S.D.N.Y. 1990), parenthetically noting "true ownership interest in property can be demonstrated by various means **including proof of a financial stake in the property**."  Decastro, 2019 WL 4509027 at *5 (emphasis added).  The Decastro court concluded its analysis of Article III standing by proceeding under the assumption that the class had standing and eventually denied the motion on class membership grounds rather than standing grounds.  Id. at **6, 17.

---

[2] The Calvo cases, as referenced by Decastro, are Calvo v. City of New York, No. 14-CV-7246(VEC), 2017 4231431 (S.D.N.Y. Sept. 21, 2017) ("Calvo I")and Calvo v. City of New York, No. 14-CV-7246(VEC), 2018 WL 1633565 (S.D.N.Y. Apr. 2, 2018) ("Calvo II").  The Calvo cases are two opinions rendered in the same matter, which has also borne the titles "Harrell v. City of New York" and "Harrell v. Joshi" at different points in its procedural history.

Even a superficial review of the Calvo cases, which Defendants did not cite, demonstrates that the standing analyses focused on the ability to omit "straw owners" from the putative class, not agreements between co-owners.  See Calvo v. City of New York, No. 14-CV-7246 (VEC), 2017 WL 4231431, at *4 (S.D.N.Y. Sept. 21, 2017) ("Calvo I"); Calvo v. City of New York, No. 14-CV-7246 (VEC), 2018 WL 1633565, at *3 (S.D.N.Y. Apr. 2, 2018) ("Calvo II").  Further, the defendants in the Calvo cases presented **evidence** that a substantial number of straw owners existed within the putative class, not mere conjecture.  Calvo I, 2017 WL 4231431 **4, 7 (noting that defendant adduced compelling evidence that certain putative class members were "straw owners," such as that some registered owners live in out-of-state while the car is used by the person who actually owns the car); Calvo II, 2018 WL 1633565 *8 (noting that defendants presented persuasive evidence that the proposed class would include, *inter alia*, persons who forged authorizations to retrieve the vehicles from impound).

The facts of the instant case make Decastro and the Calvo cases entirely distinguishable. Plaintiffs' allegations as to Morell's co-ownership of the Vehicle, his use of the Vehicle, and his property being in the Vehicle leave no room for doubt that Morell is a bona fide owner of the Vehicle.  Further, Defendants have offered **no evidence**, nor even a cogent argument, that Morell is a mere "straw owner" who would lack Article III standing.  As the Court is required to take all well-pleaded allegations as true, this Court must determine that Morell is a co-owner of the Vehicle who uses the Vehicle, has paid $14,000 towards the purchase of the Vehicle, and tried to recover the Vehicle after it was seized.  See Murphy v. City of New York, 719 F. Supp. 3d 357, 365 (S.D.N.Y. 2024).  These facts make clear that Morell has Article III standing to maintain his claims against Defendants.

## II.  THE COMPLAINT'S ALLEGATIONS ARE SUFFICIENT TO SUSTAIN LIABILITY AGAINST THE INDIVIDUAL DEFENDANTS

The Complaint contains specific, non-conclusory allegations for each of the Individual Defendants that states a claim for relief against all of them.  Just as Defendants claimed that Plaintiffs' allegations regarding Morell's property interest in the Vehicle were "conclusory," when such allegations were patently not conclusory,  Defendants also incorrectly claim that Plaintiffs' allegations as to the Individual Defendant are "conclusory" without any apparent understanding of the meaning of that word in relation to the relevant pleading standard.  Rather, Defendants seem to interchange Iqbal's 'plausibility standard' with Rule 9's 'heightened pleading requirements.' To be clear, Plaintiffs are NOT required to plead with Rule 9 specificity in this action, but Defendants nevertheless seem to be asking this Court to apply heightened pleading scrutiny.

In reality, a pleading need only state a claim that is "plausible on its face," which provides more than a "formulaic recitation of the elements of a cause of action."  Ashcroft, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 578 (2007)).  But the facial plausibility standard does not require voluminous, specific information.  A plaintiff only needs to provide "factual content that allows the court to draw the reasonable inference that the defendant is liable…."  Id. (quoting Twombly, 550 U.S. at 556).  A pleading need only "contain a 'short and plain statement of the claim showing the pleader is entitled to relief.'"  Id. (quoting Fed. R. Civ. P. 8(a)(2)).  Further, "at the pleadings stage, courts recognize the common-sense principle that a plaintiff will often not be equipped to come forward with direct evidence of a defendant's subjective or actual knowledge…"  Stone #1 v. Annucci, No. 20-CV-1326 (RA), 2021 WL 4463033, at *10 (S.D.N.Y. Sept. 28, 2021).  "At the motion to dismiss stage, a plaintiff is required only to include allegations of the facts or events they claim give rise to an inference of knowledge." Id. at *10 (quoting Kaplan v. Lebanese Canadian Bank, SAL, 999 F.3d 842, 864 (2d Cir. 2021)).

Here, the Complaint meets that standard. It does not merely recite the elements of a claim against the Individual Defendants by, for example, merely alleging they are policymakers. The allegations describe the unconstitutional scheme, along with these defendants' specific role in creating it, which puts each on notice of what he is alleged to have done wrong. The Complaint extensively details Yonkers' policy and practice of seizing vehicles and employing unconstitutional means of disposing of such vehicles. ECF No. 1 ¶¶ 1–6, 22–42, 44–47, 56. Defendants' unlawful practices are pursuant to Yonkers' policy, which is, in part, contained and implemented via Yonkers's contract with Transit. ECF No. 1 ¶¶ 2, 24, 53. Transit's contract with Yonkers provides that Transit takes possession of the seized vehicles in exchange for its towing services. ECF No. ¶¶ 42, 98–99.

As alleged, the Yonkers City Code explicitly states, "[t]he Mayor, after having received recommendations from the Police Commissioner, **shall** designate up to six qualified" towing companies to "maintain an impound area within the City of Yonkers and to remove an impounded vehicle thereto when and as directed by the Police Department." Yonkers City Code § 111-15(B) (emphasis added); see generally ECF No. 1 ¶ 52. Thus, Yonkers's city code provides for the Yonkers police chief, Sapienza, to recommend licensees with which to engage for removal of impounded vehicles to the mayor of Yonkers, Spano, such as Transit's contract. ECF No. 1 ¶ 52. Both have a direct role as a matter of Yonkers's municipal ordinances. To fulfill that role, Spano sends one of his two deputy mayors, Landi or Levy, to each meeting of the Board of Contract and Supply, which approves all tow contracts, including Transit's contract. ECF No. 1 ¶ 53. Sapienza then also maintains a written policy which provides for impounding vehicles in numerous scenarios, and then disposes of them on ten (10) days' notice by turning over vehicles' titles to Transit. ECF No. 1 ¶¶ 26–42, 44–47, 54; see also ECF No. 1 at Exs. 1, 2.

14

The Court can reasonably infer from the allegations in the Complaint and its exhibits that the Individual Defendants had personal involvement in the violation of Plaintiffs' constitutional rights considering the entire pleading. This is not a "mere 'linkage' to unlawful conduct." Muni Br. p. 6 (quoting Greene v. City of New York, 773 F.Supp.3d 94, 113–14 (S.D.N.Y. 2025)). These defendants implemented this unconstitutional policy, actually reviewed the contract that effectuated this policy against Plaintiffs and pushed the domino that invariably and foreseeably led to the deprivation of Plaintiffs' constitutional rights. The Individual Defendants are the mayor, deputy mayors, and the police chief of Yonkers, who are given specific roles in creating the contract and Yonkers's police policies which deprived Plaintiffs of their constitutional rights. And given the protocol outlined in Yonkers's code, the Court can reasonably infer Spano and Sapienza set policy relating to the towing and impound of vehicles, and that Spano, Landi, and Levy participate in Yonkers's Board of Contract and Supply to create one of the documents containing this unconstitutional policy (the Transit contract).

Spano, Levy, and Landi are alleged to have negotiated contract terms that represent Yonkers's policy — they are alleged to have had control over, and the ability to choose, *whether* Yonkers would continue to pay towing companies in the manner already adjudicated to be illegal by this very Court. See Santander Consumer USA, Inc. v. City of Yonkers, 2024 WL 4817649, at *2 (S.D.N.Y. Nov. 18, 2024) (referring to the towing contract as part of Yonkers's "Policies, Customs and Practices"); id. at *12 (taking title to seized cars and turning title over to tow company to pay for tow company's services effectuated unconstitutional taking). The motion papers leading to that decision included a towing contract, *which bore the signature of the then-Deputy Mayor*, Jim Cavanaugh. Declaration and Exhibit, Santander Consumer USA, Inc. v. City of Yonkers, No. 22-cv-8870(KMK) (S.D.N.Y. Mar. 28, 2024), ECF No. 80-2 and 80-6. The Individual Defendants

are alleged to have had the power to change the negotiated terms of contracts with towing companies like Transit, and, therefore, to have sufficient role in Yonkers's unconstitutional policies to be held liable.

Municipal Defendants ask this Court to ignore the forest and see only the trees. Municipal Defendants ignore the specifically pled facts in the Complaint, only presenting allegations with more general descriptions of the Individual Defendants' conduct. Muni Br. pp. 4–5 (citing language from ¶¶ 15–18, 50). They ignore that each Individual Defendant's role in the unconstitutional process is outlined clearly and to a degree that is appropriate at this stage of the litigation. They completely ignore that Plaintiffs' allegations give rise to reasonable inferences that squarely provide the Individual Defendants all participated in the unconstitutional scheme that damaged Plaintiffs.

Municipal Defendants want this Court to focus on semantics, such as the use of 'and/or' and referring to all the defendants collectively when making reference to the improper conduct. The cases cited by Municipal Defendants do not preclude the use of 'and/or' in pleadings. Compare Muni Br. pp. 5–6 with Greene, 773 F. Supp. 3d at 114 (making no mention of using "and/or"), Bowser v. City of New York, No. 23 Civ. 6183, 2025 WL 1707174, at *4 (E.D.N.Y. 2025) (finding that, **without specific allegations of each defendant's conduct**, repeated use of 'and/or" connectors and combining allegations against all defendants can fail to give the defendants notice of what the plaintiff's claim is and the ground upon which it rests), Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001) (affirming dismissal of a complaint which failed to differentiate between any of the defendants and failed to identify a factual basis for its claims, but not mentioning 'and/or'), Giggetts v. Cnty. of Suffolk, No. 2:19-CV-4885 (DRH) (ST), 2022 WL 1046311, at **3–4 (E.D.N.Y. Apr. 7, 2022) (dismissing claims against a defendant

16

where the complaint did not mention any conduct reasonably attributable to the defendant, but not mentioning "and/or"). Each of the foregoing cases deal with failure to put defendants on fair notice of what the plaintiff's claim is and the ground upon which it rests. But that is not the case here. The Complaint has specified allegations of each defendant's conduct and clearly puts each defendant on notice of the claims against them and the grounds upon which those claims rest.

For the foregoing reasons, Plaintiffs have stated claims for relief against the Individual Defendants. The Court should deny the Municipal Defendants' Motion.

## CONCLUSION

Defendants' motions must be denied. Plaintiffs have adequately pled the Individual Defendants' direct involvement in creating the policies which caused the constitutional violation at issue. To the extent the Court disagrees, the dismissal should be without prejudice to re-pleading after discovery is taken on the identity of those persons who are responsible for creating the offending policy, which information is largely or entirely within Yonkers's possession. As to Morell's rights, neither Defendant has cited any case nor raised any doubt that this Court has subject matter jurisdiction over the instant action. Contrarily, Plaintiffs have provided the Court with ample authority that co-owners, like Morell, who do not appear on a vehicle's title, nevertheless have a property interest in such vehicle that the Constitution protects. For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motions in their entirety and grant such other relief as the Court deems just and proper.

**NORRIS McLAUGHLIN, P.A.**

Dated:  December 19, 2025

By: */s/ Nicholas A. Duston*
NICHOLAS A. DUSTON
7 Times Square, 21st Floor
New York, NY 10036
Telephone: (212)808-0700
Email: nad@norris-law.com
*Attorneys for Plaintiffs*

## WORD COUNT CERTIFICATION

I, Nicholas A. Duston, an attorney registered to practice in this court, hereby certify that this Memorandum of Law contains 5,772 words, which complies with the 8,750 word limitations under Local Civil Rule 7.1 and the Individual Rules of Practice of the Honorable United States District Judge Kenneth M. Karas.

Dated:  December 19, 2025      By:  */s/ Nicholas A. Duston*
                                    NICHOLAS A. DUSTON
                                    7 Times Square, 21st Floor
                                    New York, NY 10036
                                    Telephone: (212)808-0700
                                    Email: nad@norris-law.com
                                    *Attorneys for Plaintiffs*