UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MATTHEW TAYLOR and REY MORELL, individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

THE CITY OF YONKERS, TRANSIT AUTO TOWING INC., MICHAEL SPANO individually, ANTHONY LANDI individually, STEVEN LEVY individually, CHRISTOPHER SAPIENZA individually, AND JOHN DOES 1-5,

*Defendants*.

No. 25-CV-5861 (KMK)

OPINION & ORDER

Appearances:

Andrew J. Campanelli, Esq.
Philip A. Salmon, Esq.
Campanelli & Assocs.
Merrick, NY
*Counsel for Plaintiffs*

Nicholas A. Duston, Esq.
Norris McLaughlin, PA
New York, NY
*Counsel for Plaintiffs*

Darius P. Chafizadeh, Esq.
Jessica M. Kalpakis, Esq.
Rachel K. Marcoccia, Esq.
Harris Beach Murtha Cullina PLLC
New York, NY
*Counsel for Defendants The City of Yonkers, Michael Spano, Anthony Landi, Steven Levy, and Christopher Sapienza*

James Monteleon, Esq.
Monteleon Law Group, PLLC
White Plains, NY
*Counsel for Defendant Transit Auto Towing Inc.*

KENNETH M. KARAS, United States District Judge:

Matthew Taylor ("Taylor") and Rey Morell ("Morell," and together, "Plaintiffs") bring this Action under 42 U.S.C. § 1983 ("Section 1983") against Defendants Michael Spano ("Spano"), Steven Levy ("Levy"), Anthony Landi ("Landi"), Christopher Sapienza ("Sapienza," and together, the "Individual Defendants"), the City of Yonkers ("Yonkers" or the "City," and together with the Individual Defendants, the "City Defendants"), and Transit Auto Towing ("Transit," and together with the Individual Defendants and the City, "Defendants"), as well as five John Doe Defendants, alleging constitutional claims pursuant to 42 U.S.C. § 1983 and state law violations in connection with the seizure of a 2020 BMW titled under Taylor's name and allegedly co-owned by Morell, and on behalf of a class of individuals whose vehicles were allegedly towed under similar circumstances, seeking monetary damages and equitable relief. (*See generally* Compl. 1, ¶¶ 4, 55–68 (Dkt. No. 1).) Before the Court are Defendants' Motions to Dismiss. (Mot. to Dismiss for Lack of Jurisdiction ("Transit's Mot.") (Dkt. No. 35); Mot. to Dismiss ("City's Mot.") (Dkt. No. 36).) For the reasons that follow, the Motion to Dismiss by Transit is denied, and the Motion to Dismiss by the City Defendants is granted in part and denied in part.

## I. Background

### A. Factual Background

The following facts, drawn from Plaintiffs' Complaint, are construed in the light most favorable to Plaintiffs as the nonmoving Parties. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378,

384 (2d Cir. 2007); *New Moon Shipping Co. v. MAN B & W Diesel AG,* 121 F.3d 24, 29 (2d Cir. 1997).

Plaintiffs reside in the Bronx. (Compl. ¶ 12.) Taylor is the titled owner of a 2020 BMW (the "Vehicle"); Morell "by agreement with . . . Taylor" is a "co-owner with a substantial interest in the Vehicle" on account of his "having invested $14,000 to purchase the Vehicle" and using it regularly, including to commute. (*Id.* ¶¶ 4, 20–22.) Morell was driving the Vehicle when he was arrested for an alleged traffic violation, a charge that was ultimately dismissed. (*Id.* ¶ 4.) At the time, the Vehicle contained items of Morell's personal property, including "expensive sneakers, his clothes, his daughter's clothes, and some of the ashes of his deceased father." (*Id.* ¶ 21.) In conjunction with the arrest, the City seized the Vehicle, directing Transit—an "active regular contract agent" for the City—to tow and retain it until otherwise instructed by the City. (*Id.* ¶¶ 4, 23–25.) Plaintiffs allege on information and belief that Transit pays the City over $90,000 for the rights to "seiz[e], impound[], and eventually tak[e] title to cars for [the City of] Yonkers." (*Id.* ¶ 43.)

"On February 25, 2024, the City sent Taylor a letter stating that, 'Ten (10) days from this date[,] April 25, 2024, the vehicle will be disposed of'" in accordance with The New York State Vehicle and Traffic Law Section 1224. (Compl., Ex. 1, at 22; *see also* Compl. ¶ 27.) A copy of this letter is attached to the Complaint. (Compl., Ex. 1, at 22.)[1] The letter instructed Taylor to notify the City's "Abandoned Auto Unit" if he wished to claim the Vehicle. (*Id.*)

[1] The Court refers to the page numbers in the exhibits attached to the Complaint as designated by the Court's electronic case filing system, which appear on the top-right corner of each electronically-filed document. In all citations to record materials that are not themselves paginated, the Court refers to the page numbers as generated by the electronic case filing system; in the case of paginated filings, the Court refers to page numbers on the documents themselves.

Plaintiffs requested that Yonkers and Transit release the Vehicle and return the property it contained. (Compl. ¶ 30.) Yonkers "would not permit Plaintiffs to recover the Vehicle unless Plaintiffs paid all fees demanded by Transit" and "executed a release of liability in favor of Yonkers." (*Id.* ¶¶ 32–33.) At the same time, Transit "would not permit Plaintiffs to recover the Vehicle unless Plaintiffs first obtained permission from Yonkers to recover the Vehicle," paid the fees requested by Transit "including a daily charge for every day Transit detained the Vehicle," and executed a release of liability in favor of Transit. (*Id.* ¶¶ 35–37.)

In May 2024, the City submitted an application to the New York State Department of Motor Vehicles to obtain title to the Vehicle. (Compl. ¶ 38; *see also* Compl., Ex. 2, at 24 (copy of the application submitted as part of the Complaint, apparently indicating an application date of May 20, 2024).) The Application represented that the "Transfer Date" on which Yonkers took title was "03/11/2024." (Compl. ¶ 38; *see also* Compl., Ex. 2, at 26.) Yonkers gave the Vehicle and its contents to Transit; the Vehicle and the contents were Transit's sole compensation for its services in towing and detaining the Vehicle. (Compl. ¶¶ 39–40, 42.) Transit's seizure, towing, and possession of the Vehicle was "solely by virtue of its furtherance of Yonkers's impounded vehicle disposal policy." (*Id.* ¶ 41.)

As should be clear from the foregoing, Plaintiffs allege that the City and Transit failed to secure a neutral review over their retention of the vehicle, and did not provide notice and an opportunity to be heard. (*Id.* ¶¶ 45, 47.) Plaintiffs "never recovered possession of their vehicle nor any of the personal property that was inside [t]he Vehicle when it was seized." (*Id.* ¶ 49.)

Plaintiffs allege that "each of the Individual Defendants is individually liable for (a) creating a policy or custom under which unconstitutional practices occurred; (b) having been informed of the violation but failing to remedy the wrong; (c) acting grossly negligent in

supervising subordinates who implemented the unconstitutional policy; and (d) exhibiting deliberate indifference by failing to act to remediate the unconstitutional policy and conduct at issue in this litigation." (*Id.* ¶ 51.) More specifically, Plaintiffs claim that "the Police Commissioner (Sapienza) first recommends, and then the Mayor (Spano) chooses, 'licensees' who are authorized to maintain 'impound areas' for the City and who can 'remove impounded vehicles' for the City, which include but are not limited to Transit." (*Id.* ¶ 52.) "The Mayor (Spano) also sends one of his Deputy Mayors (Landi and Levy) to each meeting of the Board of Contract and Supply at which the Deputy Mayor approves all tow contracts, and their terms, including but not limited to the contract with Transit implementing [the City of] Yonkers['s] aforementioned policies, customs, and practices." (*Id.* ¶ 53 (emphasis omitted).) Then, "[t]he Police Commissioner (Sapienza) maintains the written policy which requires impoundments for a wide variety of infractions, including minor ones such as driving with a suspended or expired registration, failing to produce a valid drivers license, or having failed to pay a certain amount in unadjudicated parking tickets (which [the City of] Yonkers calls being a 'scofflaw')." (*Id.* ¶ 54.) "The Police Commissioner (Sapienza) also maintains and implements the policy, custom, and practice of 'disposing of vehicles' on ten days' notice by turning over title to Transit and other towing companies, without any hearing whatsoever." (*Id.*)

B. Procedural Background

Plaintiffs commenced this Action on July 17, 2025. (*See* Compl.) At a telephonic conference on October 17, 2025, the Court set a briefing schedule on Defendants' Motions to Dismiss. (*See* Dkt. (minute entry dated October 17, 2025).) On November 24, 2025, Defendants submitted their Motions to Dismiss, (City's Mot.; Transit's Mot.), and Memoranda of Law in support thereof, (Mem. of L. in Supp. re Mot. to Dismiss ("City's Mem.") (Dkt. No. 38); First

Mem. of L. in Supp. re First Mot. to Dismiss ("Transit's Mem.") (Dkt. No. 41)). On December 19, 2025, Plaintiffs filed their Opposition. (*See* Mem. of L. in Opp'n re: Mot. to Dismiss ("Pls.' Opp'n") (Dkt. No. 42).) On January 9, 2026, Defendants filed their Reply Memoranda. (*See* Reply Mem. of L. in Supp. re: Mot. to Dismiss ("City's Reply") (Dkt. No. 44); First Reply Mem. of L. in Supp. re: First Mot. to Dismiss ("Transit's Reply") (Dkt. No. 45).)

## II. Discussion

### A. Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)) (quotation marks in original).

#### 1. Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (citation and quotation marks omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (quotation marks omitted)).

The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden" and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (alterations omitted) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor. *Id.* at 57. However, where a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings, a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial. *See Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 119 (2d Cir. 2017). "If the extrinsic evidence presented by the defendant is material and controverted," the Court must make "findings of fact in aid of its decision as to standing." *Carter*, 822 F.3d at 57.

As Defendants have not presented extrinsic evidence going to the presence or absence of standing, the challenge levied here to subject matter jurisdiction, *see* Section II.B.1 *infra*, is a facial one.

2. Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to

the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

In ruling on a motion to dismiss, the Court may also consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted). However, "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.* (emphasis omitted). "This generally occurs when the material considered is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (quotation marks omitted). And "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document. This principle is driven by a concern that a plaintiff may lack notice that the material will be considered to resolve factual matters." *Id.* (citations and quotation marks omitted).

B. Analysis

1. Morell's Standing

Transit argues that Morell lacks a protected property interest in the Vehicle. (Transit's Mot. 4.) This argument is, in effect, a challenge to Morell's standing to sue, premised on the

understanding that without a property interest in the Vehicle, Morell is not injured by its being seized and retained. (*See id.*; *see also* Transit's Mem. 1–2, 4–5.) *See Decastro v. City of New York*, No. 16-CV-3850, 2019 WL 4509027, at *5 (S.D.N.Y. Sept. 19, 2019). This is the sole argument advanced in Transit's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).[2] (*See* Transit's Mot.; Transit's Mem.) The City Defendants also move to dismiss for lack of jurisdiction over Morell's claim on the same basis. (City's Mem. 7–10.)

"An individual may have 'a property interest in the continued possession and use of a vehicle sufficient to trigger the protections of due process,'" and therefore enjoy standing to sue for the deprivation thereof, "even when they do 'not hold title to the vehicle.'" *VW Credit Leasing LTD. v. Runway Towing Corp.*, 757 F. Supp. 3d 271, 284 (E.D.N.Y. 2024) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999)), *reconsideration denied*, 2025 WL 501218 (E.D.N.Y. Feb. 14, 2025); *see also Sommerville v. Wright*, No. 12-CV-165, 2014 WL 794275, at *6 (E.D.N.Y. Feb. 25, 2014) (collecting Second Circuit cases holding that "[t]he due process protections afforded by the Fourteenth Amendment safeguard not only the rights of undisputed owners, but also the rights of those individuals with any significant property interest" in an item of property, including a vehicle) (quotation marks omitted). Here, Plaintiffs allege that Morell was operating the Vehicle at the time of his arrest, kept his property inside the Vehicle, had a co-ownership agreement with Taylor, contributed $14,000 to the Vehicle's

---

[2] For the first time in its Reply Memorandum of Law, Transit argues that Plaintiffs' Complaint does not state a claim for conversion. (Transit's Reply 8.) The Court will not consider this argument as it was not raised in Transit's Memorandum of Law in Support of its Motion. (*See generally* Transit's Mem.) *See Brown v. Laino*, No. 24-CV-6677, 2025 WL 3228035, at *9 n.9 (S.D.N.Y. Nov. 19, 2025) (declining to consider argument raised for the first time in movant's reply brief); *Barzee v. Abdulla*, No. 23-CV-2328, 2024 WL 4836870, at *6 n.11 (S.D.N.Y. Nov. 20, 2024) (same); *We the Protesters, Inc. v. Sinyangwe*, 724 F. Supp. 3d 281, 295 n.5 (S.D.N.Y. 2024) (same).

purchase, and used the Vehicle to commute to work. (Compl. ¶¶ 4, 21.) Each of these allegations is suggestive of ownership, and sufficient on a Motion to Dismiss pursuant to Rule 12(b)(6) to establish a plausible property interest sufficient to confer standing for the due process claims asserted here. *See Alexandre v. Cortes*, 140 F.3d 406, 410–11 (2d Cir. 1998) (holding a plaintiff who purchased a car under an agreement where the seller retailed title until the full purchase price had been paid nevertheless enjoyed a protected property interest even though the full price had not been paid and the plaintiff was behind on his payments); *In re 650 Fifth Ave. & Related Props.*, 581 F. App'x 61, 62 (2d Cir. 2014) (summary order) (explaining that, for Article III standing purposes, to challenge a forfeiture courts "look to ownership and possession because they are often reliable indicators of injury" resulting from a seizure, but nevertheless acknowledging that "[a] claimant that is neither an owner nor a possessor of the property may nevertheless suffer a distinct and palpable injury from the forfeiture if it has a financial stake in the property to be forfeited" (quotation marks omitted)); *Weber v. Town of LeRoy*, No. 23-CV-499, 2025 WL 2618979, at *4 (W.D.N.Y. Sept. 11, 2025) (holding, for purposes of a preliminary injunction, that a plaintiff had a property interest in several vehicles where he was the sole member of a limited liability company that owned the vehicles); *Centi v. Fedigan*, 413 F. Supp. 3d 171, 177 (S.D.N.Y. 2019) (applying New York law and explaining that "[c]ourts do not determine ownership of a vehicle based solely on title; they also look to intent, possession, and control" (citing *Dallura v. Rubicco*, 772 N.Y.S.2d 532 (App. Div. 2004))); *VW Credit Leasing LTD.*, 757 F. Supp. 3d at 283–84 (concluding at summary judgment that a lessee who "did not hold title to the vehicle but had paid substantial sums" as part of a lease enjoyed "a protected possessory interest in the car" (quotation marks omitted)); *Sommerville*, 2014 WL 794275, at *6 ("[N]o formal title ownership is necessary for plaintiff to bring a due process claim."); *Dallura*,

772 N.Y.S.2d at 532 (affirming decision of ownership where, although individual was not registered titleholder, credible evidence adduced at trial established that the individual had a possessory interest in the vehicle, dominion, and control on the date in question); *In re Moran Enters. Corp.*, 77 F. Supp. 2d 334, 341 (E.D.N.Y. 1999) ("In order to have a proprietary interest[,] actual ownership or title is not necessary. The factors to be considered in the determination of whether the plaintiff has a proprietary interest are actual possession or control, responsibility for repair and responsibility for maintenance." (quotation marks omitted)).[3]

---

[3] To the extent that Defendants argue that Plaintiffs must provide "indicia of reliability or substance to claims of ownership," (City's Mem. 5 (wholly quoting *Decastro*, 2019 WL 4509027, at *5); *see also* Transit's Mot. 5–6; Transit's Mem. 1–2, 4–5 (citing similar case law)), the Court is not convinced that such a showing is required on a Motion to Dismiss pursuant to Rule 12(b)(6). For one thing, the cases cited by Defendants were in entirely different procedural postures. *See United States v. $829,422.42, Currency*, 561 F. App'x 100 (2d Cir. 2014) (summary order) (affirming district court's dismissal, on summary judgment, of claim brought on behalf of probable "straw owner" in absence of indicia of reliability or substance to ownership claim); *Decastro*, 2019 WL 4509027, at *5–6 (noting, at class certification stage, that the defendant "presented evidence that some [class members] may have been straw owners"). Defendants cite no case, and the Court has found none, where a claim was dismissed for lack of standing in similar circumstances, and where the pleadings alleged monetary investment, use, and co-ownership, on a Motion to Dismiss pursuant to Rule 12(b)(6). Moreover, the cited authorities (and other cases interpreting them) exclusively involved a fact pattern inverse of the one described here: they discuss *title owners* who nevertheless, the evidence shows, are holding title on behalf of another party. *See United States v. Approximately 127,271 Bitcoin (BTC) previously stored at the virtual currency addresses listed in attachment a, & all proceeds traceable thereto*, No. 25-CV-5745, 2026 WL 1959295, at *4 (E.D.N.Y. July 7, 2026) (summarizing standing doctrine as applicable to straw owners). If Defendants wanted to challenge Morell's standing, they could have—but did not—make "a *prima facie* showing that [Morell] w[as a] mere straw owner[]. Once that *prima facie* showing was made, [Morell] w[ould have been] required to rebut it." *United States v. Khudainatov*, 177 F.4th 224, 229 (2d Cir. 2026).

*Safepath Systems LLC v. New York City Department of Education*, 563 F. App'x 851 (2d Cir. 2014) (summary order), also cited by Defendants, (City's Mem. 8; Transit's Reply 5), is so distinguishable it hardly requires explanation. In that case, the plaintiffs argued that "the combination of a New York State statute (Education Law § 409–f), a state regulation (New York State Education Department Commissioner's Regulation § 155.25), and a specification (New York City School Construction Authority Manual § 2.02(G)(4)) (collectively, the "mandates") created a property interest" in "their patented system of electric folding partitions primarily used

And at a minimum, Morell has a property interest in his items that were seized along with the Vehicle, and would enjoy standing to assert a claim based on the seizure of those items. (Compl. ¶ 21 (describing Morell's property that was seized, including "expensive sneakers, his clothes, . . . and some of the ashes of his deceased father").) Morell asserts claims that are based upon the seizure of personal property within the Vehicle in addition to the seizure of the Vehicle. (*E.g.* Compl. ¶ 110.) Defendants cite no cases suggesting that the absence of a protected property interest in a vehicle somehow divests an individual of their property interests in the items contained therein. (*See generally* City's Mem; Transit's Mem.) Indeed, persuasive authority from within and beyond the Second Circuit generally holds that at least in some circumstances, individuals retain a privacy interest in personal items transported within another's vehicle, particularly when they are traveling in the vehicle at the time those items are seized, as is alleged to have occurred here. *United States v. Perea*, 986 F.2d 633, 640 (2d Cir. 1993) (holding that the defendant, who was the bailee of a duffel bag inside of a car trunk, had a "protectable privacy interest" in the bag's contents, even if he did not have a privacy interest in the trunk itself, and summarizing case law holding that "bailees can have a sufficient interest in bailed property to give them standing to object to its seizure or search"); *United States v. Michael*, No. 18-CR-120, 2020 WL 6038844, at *7 n.4 (W.D.N.Y. May 22, 2020) ("[P]assengers in vehicles which they do not own or rent may still have a legitimate expectation of privacy in closed containers they possess inside such vehicle."), *report and recommendation adopted*, 2020 WL 3989343 (W.D.N.Y. July 15, 2020); *see also United States v. Edwards*, 632 F.3d 633, 642

---

in school gyms" being "required . . . [for] use[] in all New York City schools and that plaintiffs be the sole contractors permitted to install and repair them." *Safepath*, 563 F. App'x at 854. This case involves the conditions under which state statutes confer an individual with a protected property interest. *Id.* at 855. No such allegations are present here.

(10th Cir. 2001) (recognizing privacy interest of individual whose "bags were closed and stored in the trunk of [a] rental car," but who was not himself named on the rental contract, where those bags "contained [personal] items such as clothing and toiletries in addition to . . . contraband"). This caselaw supports the conclusion that, if Morell was not a co-owner of the vehicle, he might nevertheless retain his property interest in the left-behind items at the time of the seizure.

For the reasons already described, the Court determines that the allegations in the Complaint sufficiently support Morell's standing to sue at this stage. Transit's Motion to Dismiss is accordingly denied, and the City Defendants' Motion to Dismiss is denied insofar as it relies on Morell's asserted lack of standing or lack of a protected property interest.[4]

2. Individual Defendant Claims

a. Individual Capacity

The Individual Defendants move to dismiss pursuant to Rule 12(b)(6), arguing that the allegations in the Complaint are insufficient to support their personal involvement in the alleged constitutional deprivations. (City's Mem. 4–7.) The Individual Defendants urge that Plaintiffs' allegations were an impermissibly conclusory group pleading. (*Id.*)

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated

---

[4] The City Defendants argue that the cases relied on by Plaintiffs are distinguishable because most involved installment contracts with express terms. (City's Reply 5–6.) They fault Plaintiffs for failing to include additional allegations about the nature and the formality of the "agreement" between them. (*Id.* at 5.) Assuming that this argument might have some purchase if the agreement turned out to lack formal terms, *but see Centi*, 413 F. Supp. 3d at 177 (explaining that the relevant ownership inquiry under New York state law is an examination of intent, possession, and control), relying simply on the allegations in the Complaint (as required under Rule 12(b)(6)) with inferences drawn in favor of Plaintiffs as the non-movants, the Court cannot proceed on the assumption that the agreement between the Plaintiffs was, in fact, one without express terms akin to those in the cases that Plaintiffs and the City Defendants cite.

the Constitution." *Iqbal*, 556 U.S. at 676; *see also Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) ("To establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation.") (citation and quotation marks omitted); *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("[A] plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" (quoting *Iqbal*, 556 U.S. at 676)). In other words, "a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti*, 983 F.3d at 620; *see also Washington v. Morley*, No. 21-CV-7159, 2024 WL 4252596, at *4 (S.D.N.Y. Sept. 20, 2024) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under 42 U.S.C. § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional deprivation." (citation and quotation marks omitted, alterations adopted)). Accordingly, "a plaintiff may not rely on a special test for supervisory liability" instead, "[t]he violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 616–18; *Rose v. Sapienza*, No. 24-CV-1887, 2026 WL 867149, at *11 (S.D.N.Y. Mar. 30, 2026) (same). Further, to satisfy this requirement, a plaintiff must plead more than mere awareness of the unconstitutional activity. *Moran v. Town of Greenwich*, No. 19-CV-722, 2025 WL 579995, at *11 (D. Conn. Feb. 21, 2025) (explaining awareness is insufficient).

Cases describing individual involvement for the purposes of a Section 1983 claim do not necessarily "address the scope of liability under section 1983 for creation or continuance of a policy under which unconstitutional practices occurred," and liability in those circumstances is not necessarily inconsistent with the personal involvement caselaw "so long as the defendant's actions—not those of her subordinates—afford a basis" for liability. *Harnage v. Dzurenda*, No.

14-CV-885, 2022 WL 972438, at *8 (D. Conn. Mar. 31, 2022); *see also Meli v. City of Burlington,* No. 19-Cv-71, 2022 WL 444370, at *14 (D. Vt. Feb. 14, 2022) ("[W]hile a supervisor cannot be found liable alone by reason of his supervision of others who committed the violation, it seemingly remains possible for a policy maker to be held liable for their creation or continuance of an unconstitutional policy or custom.") (citation and quotation marks omitted, alterations adopted). This is precisely what Plaintiffs have alleged occurred here: not only have they made the group allegation that each Defendant was involved in the creation of or deliberate indifference to the assertedly unconstitutional policy and conduct, (Compl. ¶ 51), but also Plaintiffs have alleged that Sapienza recommends companies (including Transit) to tow and impound vehicles, (*id.* ¶ 52), and maintains and implements the City's written impoundment policy, as well as implementing the 10-day notice period without a hearing, (*id.* ¶ 54); that Spano chooses among the recommended towing companies, (*id.* ¶ 52), and directs Landi and Levy to attend meetings of the Board of Contract and Supply, (*id.*); and that Landi and Levy attend such meetings and approve the contracts governing the towing company relationships as well as their terms, as part of "implementing Yonkers['] aforementioned policies, customs, and practices," under which terms Transit allegedly carried out the actions challenged here, (*id.* ¶ 53 (emphasis omitted)). While these allegations are simple, unembellished, and perhaps underdeveloped, they are allegations that each Individual Defendant was personally involved in the "creation or continuance of a policy under which unconstitutional practices occurred," at least for the purposes of a Motion to Dismiss pursuant to Rule 12(b)(6). *Harnage*, 2022 WL 972438, at *8; *see also Lampman v. Deml*, No. 24-CV-166, 2025 WL 3012436, at *4 (D. Vt. Oct. 28, 2025) ("[P]ersonal involvement may take the form of creating or continuing an unconstitutional policy."); *Stephens v. Brunsden*, No. 17-CV-1153, 2018 WL 4043147, at *6 (E.D.N.Y. Aug. 23,

2018) (concluding that the plaintiff had adequately alleged personal involvement against a defendant who was the "final policymaker" and allegedly "personally approved, directed, requested, invited, and/or encouraged" the assertedly unconstitutional conduct, concluding these were not "naked" allegations such that they should be dismissed under Rule 12(b)(6), though acknowledging that they were "not wearing much"); *cf. Rosario v. Fischer*, No. 11-CV-4617, 2012 WL 4044901, at *9 (S.D.N.Y. Aug. 28, 2012) (explaining that claims would be dismissed for lack of personal involvement because, among other reasons, the plaintiff failed to allege "that the [c]ity [d]efendants . . . were responsible for the promulgation or implementation" of an allegedly-unconstitutional policy), *report and recommendation adopted*, 2012 WL 6681695 (S.D.N.Y. Dec. 20, 2012). These allegations, combined with each Individual Defendant's asserted involvement in the contract with Transit, clear the bar, even if barely, for personal involvement. *See Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (explaining that personal involvement can be satisfied by indirect participation, such as "ordering or helping others to do the unlawful acts"); *Bogle v. Connecticut Dep't of Mental Health & Addiction Servs.*, No. 23-CV-323, 2025 WL 1786072, at *14 (D. Conn. June 27, 2025) (holding that a dispute of material fact existed, sufficient to defeat a motion for summary judgment, where an individual defendant's name was on a letter notifying the plaintiff that they were being terminated from employment pursuant to terms of a contract and state regulations); *Comsys, Inc. v. City of Kenosha*, 223 F. Supp. 3d 792, 806–07 (E.D. Wis. 2016) (holding that voting to terminate contracts with knowledge of unlawful motive sufficed to allege personal involvement on a motion to dismiss pursuant to Rule 12(b)(6)); *Pinero v. Long Island State Veterans Home*, 375 F. Supp. 2d 162, 169 (E.D.N.Y. 2005) ("The complaint alleges that [the two individual defendants] were personally involved in making the decision not to renew [the

plaintiff's] contract."). Accordingly, insofar as the Individual Defendants seek to dismiss the claims brought against them in their individual capacities due to lack of personal involvement, their Motion to Dismiss is denied.

b. Official Capacity

The Complaint does not specify whether the claims against the Individual Defendants are asserted against those individuals in their official or individual capacities. (*See generally* Compl.) Insofar as the claims against the Individual Defendants are asserted in their official capacities, the Court determines they are duplicative of the claim against the City and should therefore be dismissed. "The Court is empowered to dismiss claims that are duplicative," *McFadden v. Keyser*, No. 23-CV-802, 2025 WL 846371, at *4 (S.D.N.Y. Mar. 18, 2025), and may do so sua sponte, *Dipinto v. Westchester County*, No. 18-CV-793, 2020 WL 6135902, at *9 n.9 (S.D.N.Y. Oct. 19, 2020). "A claim against a government officer" in their "official capacity is, and should be treated as, a claim against the entity that employs the officer . . . ." *Mathie v. Fries,* 121 F.3d 808, 818 (2d Cir. 1997) (citing *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985)); *see Booker v. Board of Educ., Baldwinsville Central,* 238 F. Supp. 2d 469, 475 (N.D.N.Y.2002) ("The real party in interest in an official capacity suit is the governmental entity and not the named official."). To the extent the City of Yonkers is a named Defendant in this case and sued under *Monell v. Department of Social Services,* 436 U.S. 658 (1978) for the conduct of the individual defendants, the official capacity claims against the individual defendants are dismissed as redundant. *See Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007) ("An official capacity suit against a public servant is treated as one against the government entity itself."); *Olschafskie v. Town of Enfield*, No. 15-CV-67, 2015 WL 9239742, at *1 (D. Conn. Dec. 17, 2015) ("[I]f a plaintiff makes the same claims against municipal officers in their

official capacities and the municipality in which the officers are employed, the official capacity claims are redundant and should be dismissed."); *Marcano v. City of Schenectady*, 38 F. Supp. 3d 238, 251 (N.D.N.Y. 2014) (dismissing claims against individual defendants in their official capacities where coextensive claims were asserted against a city under *Monell*).

## III. Conclusion

For the reasons set forth above, Transit's Motion is denied, and the City Defendants' Motion is granted insofar as it seeks dismissal of any claims against the Individual Defendants in their official capacities, but is otherwise denied. The Clerk of the Court is respectfully directed to terminate the pending Motions at Dkt. No. 35; Dkt. No. 36; and Dkt. No. 39.

SO ORDERED.

Dated: September 28, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge